[No. 16819. Department One. May 8, 1922.]

W. H. WAPLES et al., Appellants, v. N. D. SERGEANT et al., Respondents.[1]

LOGS AND LOGGING (1, 3)—SALE OF STANDING TIMBER—CONTRACTS. The title to standing timber does not pass until fully paid for, under a contract of sale providing for part payment on delivery of the contract, and the balance in installments' at $3.00 per M. for all timber cut, which was not to be removed from the land until the price was paid, although the contract contained ordinary granting and warranty clauses, and a provision that title to timber remaining on the land after a certain date (which was long after the purchase price would be paid) should revert to the seller.

ASSIGNMENT (20)—RECEIVERS (36)—TITLE OR RIGHTS ACQUIRED. Where the vendee of standing timber assigned his rights to a corporation, he took only such rights as the vendee had, and a receiver of the corporation must comply with conditions in the contract precedent to the passing of title, in order to claim title to the timber.

[1]Reported in 206 Pac. 945.

Appeal from a judgment of the superior court for Whatcom county, Brown, J., entered July 6, 1921, dismissing an action for equitable relief, tried to the court. Reversed.

*Hadley & Abbott,* for appellants.

*Walter B. Whitcomb* and *F. M. Hamilton,* for respondents.

Bridges, J.—The purpose of this action was to determine the relative rights of the parties to it in certain timber, lumber, a sawmill and sawmill equipment. The judgment of the trial court dismissed the action, and the plaintiffs have appealed.

On February 18, 1920, the appellants were the owners of a quarter section of land in Whatcom county, Washington, which had on it quantities of standing and fallen timber, and also a sawmill and its equipment, consisting of the mill building, a boiler, two engines and various saws, belting, etc. On that day they and one N. D. Sergeant entered into a written instrument concerning the sale of this property. The whole controversy here depends upon this contract and its interpretation. It is too long to be quoted here in full, but the following are the essential parts: Waples and wife—whom we will call the vendors—for a consideration of $7,000 "to them to be paid in the manner as hereinafter set forth . . . do by these presents, grant, bargain, sell and convey, as hereinafter set forth and subject to the terms and conditions as herein provided" unto Sergeant—whom we will call the vendee—"all of the timber except cedar now standing and growing or falled" upon the lands above mentioned, and the vendors "further sell and convey" to the vendee the above mentioned sawmill building and equipment.

For such property, the vendee agreed to pay to the vendors the "sum of $7,000 as above mentioned, which said sum shall be payable in the manner following, to wit: the sum of $1,500 to be paid at the execution and delivery of this contract, . . . and the balance of said purchase price shall be paid" by the vendee "at the rate of $3 per M on all lumber cut from said timber," and at the option of the vendors, "such sums so due and becoming due from time to time shall be paid at its source by the consignee of the shipment of lumber so made, or by the purchasers of the lumber sold, and this provision in this contract shall be construed as an order therefor duly authorizing any such consignee or purchaser to make such payments in the manner as specified, and at the request of the" vendors, "all bills of lading shall be delivered to" them. "All deferred payments shall draw interest from February 1, 1921, until paid at seven per cent per annum, payable annually." The vendee "further covenants and agrees to keep the said sawmill and all equipment used in and about the same insured . . . in the sum of $2,000," loss payable to "the vendors as their interest may appear." The vendee "agrees that he will not remove the said mill or any equipment used in connection therewith from the above described real estate until the said purchase is paid." He further agrees "to commence the operations of said mill upon said premises and commence cutting said timber within 60 days from the date hereof and continue such work until completed," delays because of fire, strikes, etc., excepted. "And it is further provided and agreed that said timber shall be removed from said lands on or before the first day of March 1925, and any timber not so removed on or before said date shall immediately revert to" vendors "the same as if this instrument

had not been executed," and the vendee "shall have power to go upon said lands and cut and remove said timber therefrom, without let or hindrance, subject, however, to the conditions above mentioned," and the vendors "do for themselves, their heirs, executors, administrators and assigns covenant and agree to and with" the vendee "his heirs, executors, administrators and assigns to warrant and defend the sale of said property hereby made . . . against all and every person lawfully claiming or to claim the same."

Before any work had been done under the terms of the foregoing instrument, Sergeant, who was the vendee in the contract, and a number of other men, formed the Shady Nook Lumber Company, a corporation, one of the defendants, and, in consideration of certain of the capital stock being issued to him, he turned over to the corporation all of his rights under the contract. This transfer, however, at the time, was only oral, but later, after the corporation had gone into the hands of a receiver, he and his wife executed a formal instrument evidencing such transfer. After the formation of the corporation, it took possession of the mill and commenced its operations and began to cut timber and convey it to the mill. Sometime in November, 1920, a receiver was appointed for the Shady Nook Lumber Company, and he took possession of all of the property mentioned. It does not appear how much of the timber had been cut before the commencement of this suit. In any event, only a little over $100 of the purchase price was paid after the initial payment of $1,500. The receiver claims to be the absolute owner of all the timber on this land, and also the absolute owner of the mill and all its equipment, and claims the right to make an unconditional sale of all such property for the purpose of raising money to pay

creditors. On the contrary, the appellants contend that the receiver has only a conditional right or interest in all of this property; in other words, that he can only obtain the full title to the property by paying therefor as provided in the agreement.

Stripped to the flesh, this contract means that Waples and wife agreed to sell to Sergeant this timber and sawmill, and to vest title thereto in him whenever he paid the purchase price agreed upon, and Sergeant was to be permitted to go upon the land, cut the timber, saw it into lumber, and out of the sales price of the latter pay $3 per thousand feet on the purchase price of the timber and mill, and when the whole of that purchase price was paid, Sergeant was to become the unqualified owner of the sawmill and its equipment and of such timber as remained, and which might be removed by him before March 1, 1925. Manifestly, it was the intention that the title should not vest in Sergeant until the property had been paid for; otherwise, why was not this instrument a simple deed or bill of sale; why, otherwise, did the contract make particular provision for the payment of the balance of the purchase price, and why was Sergeant required to keep the sawmill insured for the benefit of Waples and wife? Sergeant agreed that he would not remove the sawmill or its equipment until the purchase price was paid. Such a provision is entirely antagonistic to the idea that the title passed at once, because, if so, then the vendee would have had a right to remove the mill at his pleasure. It is true the contract starts out by saying that the appellants do "by these presents grant, bargain, sell and convey," which words, in themselves, of course, indicate a present vesting of title, but those words must be construed in the light of the rest of the contract. It is also true that the contract provides that any timber remaining on the land after March 1,

1925, shall revert to the vendors, and it is argued that there could be no reverting unless the title passed. It must be remembered that it was the anticipation of the parties that when the purchase price was paid the title should pass, and that such purchase price would be paid long before March, 1925, so that with reference to that date it was entirely proper to speak of the property reverting.

Respondent lays great stress on the warranty clause in the contract. It is not at all unusual—in fact, it seems to us that it is proper—for instruments of this character to contain warranty clauses. It is just as essential to have a warranty clause where the title is to pass sometime in the future, and after designated things are done, as where the title passes at once.

When the corporation was formed, Sergeant undertook to assign to it this contract, and it thereby obtained just such rights in this property as Sergeant had to give, and when the corporation went into the hands of a receiver, the latter received just such rights in this property as the corporation had. If Sergeant were still the owner of this contract, he would have the right, until such time as a forfeiture had been properly declared, to cut the timber, saw it into lumber, sell it and pay $3 per thousand feet from the sales price to these appellants, until the whole of the balance had been paid. In our opinion, the receiver has the same rights and no more. The receiver has a right to comply with the terms of the contract, or he has a right to sell the contract and all the privileges thereof to some one else who may comply with its provisions. In our opinion, the receiver is not the unqualified owner of this property, and has no right to undertake to sell and convey an unincumbered, unconditional title to it.

The judgment is reversed, and the cause remanded

with instructions to enter judgment in accordance herewith.

PARKER, C. J., FULLERTON, TOLMAN, and MITCHELL, JJ., concur.