[No. 20895.   Department Two.   March 14, 1928.]

VIRGIL FINOS, *Respondent*, v. NETHERLANDS AMERICAN MORTGAGE BANK *et al., Defendants*, E. M. CASHMAN *et al., Appellants*, THE STATE OF WASHINGTON, *Respondent and Appellant*.[1]

[1] MINES AND MINERALS (21)—LIENS—ENFORCEMENT.  One filing a claim of lien upon mining property for labor performed, under Rem. Comp. Stat., § 1129, is not required to serve notice within thirty days upon the person employing him, under Id., § 1149, an earlier enactment.

[2] MINES AND MINERALS (20)—LIEN—RIGHT TO ENFORCE AGAINST LESSOR.  One performing labor upon a mining claim for the lessee of the property, under a lease constituting a special partnership or a profit-sharing agreement, authorizing the performance of the labor, is entitled, under Rem. Comp. Stat., § 1129, to file a lien thereon as against the interests of all the parties authorizing the work.

[3] STATUTES (14)—TITLE—EXPRESSION OF SUBJECT OF ACT—WORKMEN'S COMPENSATION.  The title of the industrial insurance act reciting that it relates "to the compensation and medical and surgical care of workmen injured and the safety of workmen engaged in extrahazardous employment" is broad enough to cover the provision for lien claims for premiums contained in the act.

[4] PLEADING (104, 120)—CROSS-COMPLAINT—AMENDMENT TO CONFORM TO PROOF.  The prayer of a cross-complaint will be deemed amended to conform to the proof.

[5] LIENS (2)—INDUSTRIAL INSURANCE ACT—PRIORITY OF LIEN CLAIMS.  The title of the vendor of mining property under an

[1] Reported in 265 Pac. 167.

executory contract, reserving the title, who was in no way benefited by or a party to the mining operations, is not subject to the lien given the state under the industrial insurance act for unpaid premiums; since the lien can not be given a retroactive effect.

Appeal from a judgment of the superior court for King county, Moriarty, J., entered July 21, 1927, in favor of the plaintiff in an action to foreclose a miner's lien, and cross-appeal by the state from a judgment denying priority of lien for fees due under workmen's compensation act. Affirmed.

*J. W. A. Nichols,* for appellants Cashman *et al.*

*The Attorney General, Mark H. Wight,* Assistant, and *Chas. O. Flint,* for intervener and appellant state of Washington.

*Palmer, Askren & Brethorst* and *P. O. D. Vedova,* for plaintiff-respondent.

*Wright, Froude, Allen & Hilen,* for defendants-respondents.

HOLCOMB, J.—Respondent brought this action, on his own behalf individually and as assignee of five other claimants, to recover amounts alleged to be due for labor upon a mining claim performed by respondent and his assignors, of which mining claim the defendants were alleged to be, respectively, owner, lessors and lessees. The complaint alleged that the Netherlands American Mortgage Bank, a corporation, owned the fee, and that defendants Cashman and wife were contract purchasers from the bank, and the other defendants named in the complaint, and their respective wives, were lessees of the mine. Upon the commencement of the action the state of Washington intervened and filed a cross-complaint, seeking the foreclosure of its industrial insurance lien upon the same property for unpaid industrial insurance premiums, amounting

to $190.20, while the mine was being operated by the lessees, or the Success Mining Company, a corporation organized by them.

At the trial, respondent moved for a dismissal of his action against the defendant Netherlands American Mortgage Bank and conceded the priority of the lien of the state of Washington. None of the lessees named in the complaint as defendants appeared, and default was granted and entered by the court against them.

A stipulation was entered into between respondent and appellants Cashman and wife, by which it was agreed:

(1) That E. M. Cashman and wife were purchasing the mine under a conditional sales contract from the Netherlands American Mortgage Bank.

(2) That the defendants E. M. Cashman and wife had leased to the lessee defendants the mine under a written lease, a copy of which was thereto attached.

(3) That the work for which the several liens were filed was done upon the mine and was of the value for which judgment was asked; and that the lien claims were properly assigned and filed.

(4) That the interests of the lessees in the mining claim were subject to the liens.

A personal judgment was given by the trial court against the lessees for the amount of the lien claims and against appellants Cashman and wife, the lessors, for the foreclosure of the lien against their interests in the mine and the sale of the mining claim to pay the same.

It was stipulated by the parties in the court below that the facts as pleaded in the intervention complaint of the state were true. It was also admitted that the Netherlands American Mortgage Bank is the owner of the property attempted to be liened upon, subject to the conditional sales contract made by it to appellants

Cashman, recorded December 10, 1926, and that the mining operations which resulted in the liability to the state for unpaid industrial insurance premiums were carried on by the Success Mining Company, a corporation, which was insolvent, operating under and by virtue of the lease made by the appellants Cashman and wife to Wiero *et al.*

From the complaint in intervention, stipulated to be true, it appears that the Success Mining Company carried on extra-hazardous mining operations during a period from September 1, 1925, to February 13, 1926, upon the properties described in the pleadings, and incurred the industrial insurance premiums mentioned, no part of which has been paid; that in due course the state filed its lien upon the property so operated in accordance with ch. 136, Laws of 1923, p. 373.

After a trial, the trial court made findings of fact and conclusions of law and entered personal judgment in favor of the state against appellants Cashman and wife, declaring the judgment to be a lien upon the equity of the Cashmans, but denied the state a judgment establishing its claim as a lien upon the property and rights of the Netherlands American Mortgage Bank, and directing foreclosure thereof.

From the last mentioned portion of the judgment the state has appealed.

The lease stipulated into the record, omitting the formal parts, is as follows:

"Witnesseth: That the lessors in consideration of the covenants hereinafter set forth, do by these presents lease, demise and let unto the said lessees the following described property in King county, State of Washington, described as follows, to-wit: [Here follows description.]

"To have and to hold the same to the said lessees for the term of fifty years beginning 22nd day of September, 1924, and ending 22nd day of September, 1974.

"The lessees in consideration of the lease of said premises as aforesaid covenant and agree with the lessors as follows:

"That the lessees will pay to the lessors as rent for the demised premises the sum of one hundred thousand dollars ($100,000) payable as follows, to-wit:

"One thousand dollars ($1,000) on the 18th day of September, 1924, and five hundred dollars ($500) on the 18th day of March, 1925, and one thousand dollars ($1,000) on the 18th day of September, 1925, and fifteen hundred dollars ($1,500) on the 18th day of March, 1926, and one thousand dollars ($1,000) on the 18th day of September, 1926, and one thousand dollars ($1,000) every six (6) months thereafter until one hundred thousand dollars is fully paid; and in case said rent is not paid at the time and place to be agreed upon, then the whole sum hereby covenanted to be paid as rent for said premises during the term of this lease shall become due and payable at the option of said lessor, and the said lessors may have the option to declare this lease forfeited and terminated and may recover possession of said premises by the forcible entry and detainer act, without further notice, except notice to quit or pay rent within thirty (30) days; except as otherwise provided herein, the giving of sixty (60) days written notice to lessor.

"Said lessees shall have the right to mine and prospect for coal anywhere on said premises; twenty (20) acres of said premises may be used for town site or building purposes, which twenty (20) acres shall be staked off in a continuous tract.

"The narrow work and gangway of mines shall be kept at least two hundred (200) feet ahead of pillars or breast or whatever system the lessees work.

"All mines shall be kept in good condition at all times and all water shall be kept out of the same and mines shall be properly timbered. The lessors shall have the right to enter mines for inspection at any time. '

"The said lessees shall pay to said lessors a royalty of twenty-five cents (25c) per ton of 2,000 pounds each on all marketable coal mined except coal used for the

lessees' own use; said royalty payments to commence on January 1st, 1925, for the coal mined during the preceding year, and annually thereafter, during the life of the lease, on the first of each year the lessees shall make such royalty payments as may be due for the preceding year; *Provided, however,* That the said lessees shall be entitled to deduct, at the time of paying the royalty for the coal mined during the preceding year, the annual rental which they shall have paid to the lessors at the commencement of said year and during the year, when the sum of royalty to be paid on the basis above set forth shall exceed the amount of said rental for such year, but in no case shall there be any rebate or refund of the rent as prescribed in paragraph providing therefor.

"That all buildings and improvements shall be kept in good condition; the fir timber only on said premises may be used for building purposes only in and around the mine.

"The said lessors reserve the right to the clay on the said premises and the right to remove the same at lessor's option.

"The said lessees shall keep a book of accounts of all coal mined and render to the said lessors a just and true statement of account monthly.

"In the event the lessees are unable to comply with the terms and conditions of this contract, the said lessees shall give said lessor a sixty (60) day written notice before the time or date when said lessees intend to abandon said lease and to remove machinery on said premises in order that the lessors may be able to install machinery to protect the said premises and mines thereon, and at the end of said sixty day period said lease and contract shall be terminated.

"Lessor shall pay current taxes, except on amounts caused by any additional improvements made thereon, assessed against said property by reason of said improvements which shall be paid by lessees.

"Lessees will permit no liens or other incumbrances to be levied or assessed against said premises, and any violation thereof will cause a forfeiture of said contract at the option of the lessor.

"Lessees shall pay for all industrial insurance and the said lessor shall not be liable for any claims, demands, or damages whatsoever, and said lessees shall hold said lessor free and harmless from any such claims, demands or liabilities whatsoever.

"That no act shall be done and no trade or occupation or business shall be carried on on said premises or any use made thereof in violation of any law of the state of Washington.

"That said lessees will neither let or sub-let any part of said premises or interest therein, nor shall this lease be assignable by the operation of law or otherwise without the written consent of the lessors."

The lease was duly executed, acknowledged, delivered and recorded September 27, 1924.

Appellants Cashman, before answering, had demurred to the complaint of respondent and the complaint in intervention of the state, which demurrers were overruled. Respondent and the state demurred to the amended answer of appellants, which demurrers were sustained. To these adverse rulings the appellants Cashman excepted, and assign them all as errors upon this appeal.

It will not be convenient to notice each of the nineteen errors assigned by appellants separately, but they will be discussed in groups so far as necessary.

[1] Appellants first urge that their demurrer to the complaint should have been sustained because there is no allegation in it that respondent or his assignors served a copy of notice of lien upon the person employing them within thirty days after the filing of the lien with the county auditor.

The lien claim of respondent and his assignors apparently was filed under the provisions of Rem. Comp. Stat., § 1129 [P. C. § 9705], relating to miners' liens, which, so far as pertinent, is as follows:

"Every person performing labor upon . . . in the construction, alteration or repair of any mining

claim . . . or who performs labor in any mine or mining claim . . . has a lien upon the same for the labor performed . . . whether performed or furnished at the instance of the owner of the property subject to the lien or his agent; and every contractor, subcontractor, architect, builder or person having charge of the construction, alteration or repair of any property subject to the lien . . . shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter.''

This law was originally enacted in part in 1893 (Laws 1893, p. 32, § 1); but it was amended in 1905 (Laws of 1905, p. 229, § 1). There is a subsequent section (§ 1149, Rem. Comp. Stat.) [P. C. § 9723] which provides for laborers' liens on personal property, franchises, etc., of mining and certain other concerns, which appellants claim supersedes the section above quoted, and that respondent's lien was one to be initiated and proceedings under it to be had, under the later section. But the later section was enacted in 1897 (Laws of 1897, p. 55, § 1); and the statute providing for liens upon the real property or an interest therein was enacted subsequently to the one authorizing liens against personal property, franchises, etc., so that, if one is superseded by the other as subsequent legislation, it is the one upon which appellants rely. But that is not the case, as we recognized that the statute relating to liens for labor upon personal property, franchises, etc., is merely a law providing an additional remedy and providing for other steps to be taken when it is relied upon. *Heal v. Evans Creek Coal & Coke Co.,* 71 Wash. 225, 128 Pac. 211. We have also held that mine workers may foreclose liens under § 1129, *supra. Dahlman v. Thomas,* 88 Wash. 653, 153 Pac. 1065.

We conclude, therefore, that that contention is unfounded.

[2]    The next contention urged is that the development of the mine under the lease was not authorized.

It is insisted that the trial court was mistaken in denominating the agreement between the parties, appellants and their lessees, a partnership.    The cases cited upon this proposition, *Ottison v. Edmonds,* 15 Wash. 362, 46 Pac. 398, and *Griffiths v. Von Herberg,* 99 Wash. 235, 169 Pac. 587, are not apt.    In the first case cited the court merely found that the writing which was assumed to constitute an agreement of partnership was not signed by one party, and amounted to nothing more than a unilateral agreement; and that the agreement in fact entered into was oral, which oral agreement was one of lease, and not the same as the writing relied upon.    In the second case cited, it was found that there were no elements of a partnership of any kind existing, there being merely a contract for payment for services by a broker out of a percentage of the profits.

An examination of the contract of lease set out herein makes it clear that development of a mine was authorized by it.    It also is clear that the agreement between the parties was a profit sharing contract.    While it may not be technically correct to call it a partnership contract, it might be denominated a special partnership for the purposes therein entered into; but, at any rate, it was an agreement for a sharing of the profits in whatever coal was mined from the premises. It also required the lessees to pay taxes and industrial insurance premiums, and to prevent liens or other encumbrances being levied or assessed against the premises.

In the *Dahlman* case, *supra,* we reviewed the authorities, both in this state and in other jurisdictions, upon liens against such interests in real estate.    We there sustained the lien of miners under the same statute

as is here involved, although the contract there was a contract of purchase. But we said, in effect, that the form of the contract would be immaterial, saying:

"We start with the presumption, therefore, that the owner of the land is exempt. It does not follow, though, that these words of exemption are a shield against obligations really, though indirectly, his own. A lease may be such only in name, a contract of purchase only a mere form. There must not be left an easy opportunity for subterfuge or fraud against laborers and supply men. And, even if the instrument be a lease in truth or a sale in truth, it may contain provisions that ought to be construed as making the lessee or vendee an agent to create something which the owner himself desires for the property, and which tends to benefit his own interest. Hence the courts, seldom binding the vendor's property through a vendee who makes improvements of his own volition, almost always bind it under such contracts of sale as distinctly authorize the improvements." [Citing authorities.]

In that case, as was stated in the opinion, the vendor had given an option on the property to the vendees, who in turn obligated themselves to begin mining and to pay a royalty of 12½% of the gross receipts until they should have paid a certain amount of the purchase price. This first payment was not obligated to be made sooner than four years, yet the royalties were not to be deducted from the purchase price.

In this case, it will be noted that, under the contract, the lessees were to pay certain sums each year for a number of years, and these sums were to be accounted for in the royalties to be paid each year until the total sum of $100,000 should have been paid. It is therefore not necessary to presume that the lessees were *obligated* or *required* to conduct mining operations upon the premises, though they were authorized by the contract so to do, and it was to the interest of both the

lessors (these appellants) and the lessees and their successors so to do.

In the *Dahlman* case it is further said:

"Summing up these cases, [referring to previous cases in this state] they have relieved the landlord when he had profits but had not authorized improvements, and have relieved a vendor when he had authorized the improvements but had no interest in the profits. In the present case the owner has both features against him."

So, in the instant case, appellants have the feature of having authorized the mining operations, and reserved profits therefrom, against them.

In another recent case, *Pitcher v. Ravven*, 137 Wash. 343, 242 Pac. 375, we refer to the *Dahlman* case approvingly in holding that the fee interest may be subject to the lien created by the owner of the lesser interest, when the owner of the fee had authorized the improvements and had an interest in the profits which would arise therefrom. But in that case there was nothing in the contract on behalf of the vendor which authorized the improvement, and there was no act of ratification on the part of the vendor. Authority did not exist in that case either by contract or by estoppel or ratification.

While it is true that the word "authorize" is sometimes used the same as "to require," we do not think it was so used in the *Dahlman* case or the cases discussed therein. In other words, it was not intended to use the word "authorize" in that opinion as synonymous with "obligate" or "require". In such cases, the meaning as ordinarily understood, in acts of agency of any kind, is "to empower; to give a right to act; to clothe with authority; . . . " 6 C. J. 865. See, also, Funk & Wagnall's New Standard Dictionary; Webster's New International Dictionary.

We must conclude, therefore, that, under our statute and decisions, the labor performed upon the mining premises in question was performed at the instance of those authorized by the contract of appellants to perform it, and is lienable under § 1129, *supra*, against all the premises and interests of appellants.

[3] As to the appeal of appellants against the state's case in intervention, appellants claim that the overruling of their demurrer to the complaint in intervention, on the ground that the purported lien clause of the statute is void, in that it is not constitutionally embraced in the title to the act, is a ground of error here. The title to the original act (Laws of 1923, ch. 136, p. 373) reads:

"An Act relating to the compensation and medical and surgical care of workmen injured and the safety of workmen engaged in extrahazardous employment, and amending sections . . . 7682 . . . , of Remington's Compiled Statutes of Washington."

It is argued that the language of the title gives no intimation or idea of any lien intended to be provided for in the enactment. Several cases are cited, upon various titles to statutes, from this court, which are not in point.

This court has consistently held from early statehood that the title to an act need not be an index to its entire contents, but, if it entirely comprehends the legislation in question, all incidentals germane thereto may be brought within the legislation, although not specifically referred to in the title. *Archibald v. Northern Pacific R. Co.*, 108 Wash. 97, 183 Pac. 95; *McQueen v. Kittitas County*, 115 Wash. 672, 198 Pac. 394; *Duke v. American Casualty Co.*, 130 Wash. 210, 226 Pac. 501; *State v. Cowlitz County*, 146 Wash. 305, 262 Pac. 977.

[4] Appellants further urge that the court granted

the state a personal judgment, though it was not prayed, and that it was erroneous to allow it, in any event. Under our ruling that they were interested in the operations, and authorized them, the state is entitled to personal judgment against them, and the prayer, if deficient, should be deemed amended to allow it whatever judgment it, in law, is entitled to.

[5] Turning now to the state's appeal from the judgment, it appears that, on a date subsequent to the taking effect of ch. 136, Laws of 1923, p. 373, heretofore referred to, the Netherlands American Mortgage Bank sold the premises in question to appellants Cashman and wife upon a conditional sales contract, which was duly recorded; and on a still later date, appellants Cashman and wife leased the properties to Wiero *et al.* for the purpose of coal mining operations, which lease was also duly recorded; and the lessees thereafter formed a corporation, which employed workmen in extra-hazardous coal mining operations and failed to pay the industrial insurance premiums thereon. That corporation having become insolvent, no premiums could be collected from it.

Section 3, chapter 136, Laws of 1923, p. 397, which is rather lengthy, among other things, provides that the lien of the state for the accident or the medical aid fund shall be a lien prior to all other liens, except taxes, upon the real estate, plant, works, equipment and buildings improved, operated, or constructed by any employer, and that the lien created shall attach from the date of the commencement of the labor upon such property for which such premiums are due. Further provisions are made for filing liens, upon default of any employer, with the county auditor in the county where the property is situated, and providing for the foreclosure of such liens by the state in the same manner provided by law for the foreclosure of other liens

on real or personal property. There are also provisions in the same section relating to proceedings in cases of insolvency or bankruptcy of the employer, and providing that in such case the lien of the state shall be prior to all other liens except taxes.

The state therefore contends that, under the statute, once its lien attaches it becomes prior to all other liens except taxes. That is true, and respondent in this case conceded it. The question as to how far-reaching the prior lien of the state can be permitted to go, affects only the fee in the estate which is owned by the respondent bank.

So far as the record in this case shows, the bank was in no way connected with the coal mining industry carried on upon the property. Unlike appellants Cashman, it received no benefits, nor was it entitled to receive any benefits derived from the mining operations. It simply had an outstanding executory contract with the Cashmans, with title reserved as security. We think it true, as counsel for respondent bank asserts, that "ordinary lien claimants could not subject the property of the bank to their claims for the reason that in equity the bank had not in any manner been a party to the operations or been benefited by their progress."

To give effect to the contention of the state would be to make the operation of the statute retroactive as to the bank.

"Acts creating liens are not to be construed retroactively so as to disturb vested rights." 12 C. J. 965.

See, also, *National Bank of Commerce v. Jones,* 18 Okl. 555, 91 Pac. 191; *Albertson v. Landon,* 42 Conn. 209; *Young v. Jones,* 180 Ill. 216, 54 N. E. 235.

The state further contends that it has the right under its police power to impose such liens upon any and all kinds of property in any and all kinds of con-

tracts, including those in force at the time of the legislation providing therefor.

We concede that the state has the right to impose liens and make them prior as to other liens against the same property under its police power. *State ex rel. Davis-Smith v. Clausen,* 65 Wash. 156, 117 Pac. 1101; *State v. Postal-Tele. Cable Co.,* 101 Wash. 630, 172 Pac. 902. We do not think that, even under its conceded police power, the state has the right to attach liability to the property of a third person, unconnected with the operations out of which the state exacts premiums or payments for the protection of still other persons. Such, it seems to us, would be an unreasonable exercise of the state's police power.

"A statute or ordinance licensing or taxing an occupation or privilege must be reasonable in its terms and conditions; if it impose a license or tax in such a manner or upon such terms as to be unreasonable, oppressive, or in restraint of trade, it is void." 37 C. J. 186.

While it is true that we are not here considering a statute or ordinance licensing or taxing an occupation or privilege, or a taxing law, we are considering a law imposing a prior lien in the exaction of payments for operations under laws, under which operations and under which laws the respondent bank derives no benefit. The exercise of the police power of the state in respect thereto should, therefore, be reasonable or it would be void. While we can find no authority exactly fitting, we think reason and general principles contrary to the contention of the state.

Upon this question, also, we conclude that the judgment of the trial court was right.

The judgment of the trial court is, therefore, in all things affirmed.

MACKINTOSH, C. J., MAIN, MITCHELL, and FULLERTON, JJ., concur.