[No. 25052.  Department Two.  August 15, 1934.]

G. A. TRIPP *et al., Appellants,* v. NIAGARA LOGGING COMPANY *et al., Respondents.*[1]

[1]Reported in 35 P. (2d) 95.

**552**

*Fred M. Bond,* for appellants.

*John I. O'Phelan,* for respondents Niagara Logging Co. *et al.*

*Welsh & Welsh,* for respondent Transit Tow Boat Co.

BLAKE, J.—This appeal involves priorities of lien claimants under chattel mortgages, loggers liens, towboat liens, and an attachment lien, on logging equipment and timber products.

On April 18, 1933, plaintiffs filed a complaint setting up two causes of action against defendant Niagara Logging Company. The first cause of action was for $2,037, on account of money advanced by plaintiffs to pay taxes owing by the logging company. The second cause of action was on an assigned claim against the logging company on account of services rendered to it by the South Bend General Hospital. The only concern we have with the issues in this case is the status of a writ of attachment issued therein on April 20, 1933, and levied on a raft of logs belonging to the logging company.

On April 21, 1933, plaintiffs filed a complaint in which they sought to foreclose two chattel mortgages executed by the Niagara Logging Company. The first mortgage was executed January 18, 1930, and was given to secure a note for $14,079, of the same date, payable to Pacific State Bank. At the time suit was commenced, there was a balance of $150 due on that note. But the mortgage provided:

"This mortgage is given for and intended to secure the payment of any renewal or renewals of the above described promissory note, and also of any other indebtedness that the party of the first part may owe

the said party of the second part during the life of this mortgage."

Under this clause, foreclosure was sought also on a note, payable to Pacific State Bank, for two thousand dollars, executed by the logging company December 5, 1932. This was a renewal of a note executed some time before. Just when the original note was executed, is not clear from the record.

This mortgage covered all logging and camp equipment belonging to Niagara Logging Company located on the northwest quarter (NW¼) of section 27, township 10 N., R. 10 W. W. M. The above described notes and mortgage were assigned to plaintiffs by Pacific State Bank.

In their second cause of action, plaintiffs sought foreclosure of a chattel mortgage executed and delivered by Niagara Logging Company to them on the 15th of June, 1932. This mortgage was given to secure a note of the same date, payable to plaintiffs, in the sum of twelve thousand dollars. This mortgage covered the same logging and camp equipment described in the mortgage of January 18, 1930, and also

". . . all personal property of every kind, character and description owned by and in the possession of said Niagara Logging Company and situated in Pacific County, Washington, including plank on logging road."

George W. King, Lon Schooler, Mrs. Lon Schooler, Ed Nystrom, Elsie King, Harry Hackett and Tom Masney, having filed liens for labor under Rem. Rev. Stat., § 1162, were made parties defendant. Lon Schooler, on behalf of himself and the other lien claimants, filed a cross-complaint praying the foreclosure of their labor liens. The state of Washington intervened, praying foreclosure of its lien for premiums due from Niagara Logging Company under the indus-

trial insurance act. The Transit Tow Boat Company intervened, asserting a lien for towage on the same raft of logs upon which the attachment above mentioned was levied.

The property of the company affected by the liens consisted of two rafts of logs and the logging and camp equipment described in the two mortgages. The trial court entered a decree establishing the order of priority of all the lien claims—mortgage, labor and towboat—and the lien of the state for industrial insurance premiums. The decree then provided for the sale of all of the property covered by the mortgages and lien claims. We gather that two sales were ordered —one of the logging and camp equipment described in the mortgage of January 18, 1930, and the other covering all other property of the Niagara Logging Company. The decree then provided that the expenses of each sale should be paid out of the proceeds thereof. The decree, after providing for the payment of taxes due Pacific county, provided, among other things:

(a) That the industrial insurance premiums due the state of Washington be first paid—one-third out of the proceeds of the sale of the logs, two-thirds out of the proceeds of the sale of logging and camp equipment;

(b) That out of the proceeds from the sale of logs there be next paid the lien claims of Lon Schooler, Anna Schooler, Elsie King, Ed Nystrom, Tom Masney and Harry Hackett;

(c) That there be next paid out of the proceeds of the sale of logs the towboat lien of Transit Tow Boat Company, amounting to $168.89;

(d) That any proceeds remaining from the sale of logs be applied on plaintiffs' judgment on its mortgage of June 15, 1932;

(e) That the proceeds from the sale of logging

and camp equipment be first applied to satisfy the amount ($2,642.69 and attorneys fees) decreed to be due plaintiffs under the foreclosure of the mortgage of January 18, 1930;

(f) That the proceeds from the sale of logging and camp equipment be next applied on the lien claims of the laborers;

(g) That the proceeds from the sale of logging and camp equipment next be applied on the lien of the tow boat company.

In other words, the decree sustained the priority of plaintiffs' mortgage of January 18, 1930, on logging and camp equipment over all lien claims, except that of the state of Washington, and subordinated their mortgage of June 15, 1932, to the liens of all claimants. Plaintiffs appeal.

There are twenty assignments of error, which may be grouped for discussion as follows:

(1) Error in prorating one-third of the amount to be paid to the state to the proceeds from the sale of logs and two-thirds to the proceeds from the sale of logging and camp equipment.

(2) Error in establishing priority of labor liens over appellants' attachment and their mortgage of June 15, 1932.

(3) Error in establishing priority of the tow boat company's lien over appellants' attachment and their mortgage of June 15, 1932.

We shall discuss appellants' contentions in that order.

■ I. It is conceded that, under subdivision (c), Rem. Rev. Stat., § 7682, the lien of the state, for payments and penalties due under the workmen's compensation act is superior to all other liens except taxes. Appellants contend, however, there was no ground upon which the court was justified in charging two-

thirds of the amount of the state's claim to the proceeds from the sale of logging and camp equipment, and only one-third to the proceeds from the sale of logs. The Niagara Logging Company was hopelessly insolvent. The appellants' rights were held to be paramount to respondents' in the logging and camp equipment. The respondents' rights were held to be paramount to appellants' in the logs and timber products. The state's lien was conceded to be paramount to both on all the property of the logging company. We think the showing was ample to justify the court in marshaling the assets of the logging company. 2 Story's Equity Jurisprudence (14th ed.), § 855; 38 C. J. 1372, 1373. We find nothing in the record to indicate that the manner in which the state's claim was prorated between the two funds was inequitable. 38 C. J. 1382.

II. The Niagara Logging Company commenced logging on the south half of section 26, township 10 N., R. 10 W. W. M. some time prior to June 15, 1932, the date of execution of the twelve thousand dollar chattel mortgage. While the operations appear to have been interrupted from time to time, it is hardly disputable that the logging was one continuous operation. Also, the evidence is conclusive that the employment of all the labor claimants was continuous from a time preceding that date until the operations were completed. *Cross v. Dore*, 20 Wash. 121, 54 Pac. 1003; *Greely v. Bank of Stevenson*, 169 Wash. 181, 13 P. (2d) 493.

Appellants' principal objection to the labor liens is that they were not filed within thirty days after the cessation of the work, as required by Rem. Rev. Stat., § 1168. The question presented is one of fact. The logs were all in the water early in January, 1933. The lien claims were filed between April 18 and April 25,

1933. Appellants contend that the logging operation ceased when all of the logs were put in the water. It appears conclusively, however, that between 250,000 and 300,000 feet of logs had broken from the rafts prior to January, and had been scattered and carried up onto the banks and tide flats. The evidence showed that it was necessary, in order to complete the logging operations, to retrieve these logs and gather them in booms. The evidence further showed that the work of retrieving these logs was carried on as and when the tide was sufficiently high for the workers to reach them. This work was not finally completed until early in April. We think, under this evidence, the claims were filed "within thirty days after the close of the rendition of the services."

Appellants further contend that the work of retrieving the logs was unduly and fraudulently delayed for the sole purpose of extending the time for filing lien claims. We do not think there is any substantial basis for the contention. As we have seen, the work of retrieving the scattered logs was a necessary part of the logging operation. While the work was not completed as soon as it might have been, we find nothing in the record to justify the court in concluding that the delay in completing it was with the fraudulent purpose of extending the time for filing claims of lien. *Rieflin v. Grafton,* 63 Wash. 387, 115 Pac. 851; *Osten v. Curtis,* 133 Wash. 360, 233 Pac. 643.

■ ■ Appellants further contend that the labor claimants filed claims in fraudulently excessive amounts. This will necessitate an examination of the respective claims. In considering them, it is to be borne in mind that the priority of the labor liens was established only on the logs. Under Rem. Rev. Stat., § 1166, the lien claimants are entitled to make claim

for services rendered within eight calendar months preceding the date of filing their claims.

On April 18, 1933, Ed Nystrom filed a claim for $816, based on an agreed wage of seven dollars per day. According to our computation, the evidence shows that he worked one hundred twenty days subsequent to August 18, 1932, which, at seven dollars per day, would entitle him to $840. The court allowed him $512.

Mrs. Schooler filed a claim on April 18th for $743.55. She was employed as camp cook at $80 per month. At that rate, she was entitled to a lien for $640. The court allowed her $486. We do not think her claim was so much in excess of the amount to which she was entitled under the evidence as to justify its disallowance on the ground that it was fraudulent.

Elsie King filed a claim on April 18th for $90. The court allowed her claim in full. There was evidence to the effect that she was employed as a waitress at the camp at the agreed wage of $45 per month.

Tom Masney filed a claim on April 19, 1933, for $100. The court allowed the claim in full. That was the balance due for eighty-six days work, subsequent to August 19, 1932, at three dollars per day.

Harry Hackett filed his claim April 19, 1933, for $200, which the court allowed in full. That was the balance due for one hundred twenty-five days work, subsequent to August 19, 1932, at three dollars per day.

Lon Schooler filed his claim on April 25, 1933, for $480.80. The court allowed him $432. Subsequent to August 25, 1932, Schooler worked one hundred forty-five days, at the rate of four dollars per day.

Some contention is made that none of the lien claimants, in making their claims, deducted amounts due from them to the logging company. This is apparently

true as to Lon Schooler and Ed Nystrom. We do not think, however, that their failure so to do requires the claims to be disallowed as fraudulent. It is obvious, we think, that the court, in allowing the claims, took such indebtedness into consideration in determining the amount due to each of the claimants.

■ III. The claim of Transit Tow Boat Company was filed May 13, 1933. The claim was for towing a raft of logs from Bear river to South Bend in November, 1932. The actual towing was completed about November 8th. The raft was thereafter in the possession of the towboat company at South Bend. This raft, it will be remembered, was levied on by the sheriff on April 20th, under a writ of attachment issued in one of these cases on April 18th. The theory of counsel for Transit Tow Boat Company is that the services of towing did not end until the writ of attachment was levied; that, consequently, the claim of lien was timely filed under Rem. Rev. Stat., § 1168. The argument is that, notwithstanding the actual towing from Bear river to South Bend was completed about November 8, 1932, the raft remained in possession of the towboat company to be towed further to such place of delivery as the logging company might thereafter direct.

We do not think this argument is sound. The statute (Rem. Rev. Stat., § 1162) does not contemplate a lien for *storage*. It provides a lien for *towing*. The fact that the towboat company *might* have been called upon by Niagara Logging Company to tow the raft further at some future time is not sufficient to extend the time for filing its claim of lien. Having failed to file its claim of lien within thirty days "after the close of the rendition of the services" for which it was entitled to claim a lien, the claim of Transit Tow Boat Company must be disallowed.

Appellants contend that, under the blanket clause in the mortgage of June 15, 1932, the decree should have included office furniture and equipment located at South Bend. We have been unable to find any evidence in the record proving the existence of such property.

The cause will be remanded, with directions to the trial court to disallow the claim of Transit Tow Boat Company. In all other respects, the judgment is affirmed.

BEALS, C. J., GERAGHTY, and TOLMAN, JJ., concur.

HOLCOMB, J. (dissenting in part)—I concur in all the foregoing decision except the denial of the lien of the Tow Boat Company, as to which I dissent. In my opinion, the raft was in *towage,* not *storage,* until the logs would be needed for sawing, in due course of manufacturing operations, at South Bend. Before such need arose, the sheriff levied the attachment which terminated the towing service. Within thirty days thereafter, its lien was filed, which was timely.