[No. 29938. Department Two. August 24, 1946.]

THE STATE OF WASHINGTON, Appellant, v. FRED H. LAWTON, Defendant, J. PINCUS, Respondent.[1]

'Reported in 172 P. (2d) 465.

The *Attorney General, William J. Millard, Jr.,* and *Bernard A. Johnson, Assistants,* for appellant.

*Morris A. Robbins* and *Kathreen Mechem,* for respondent.

JEFFERS, J.—This action was instituted by the state of Washington against Fred H. Lawton, doing business as Western Millwork Manufacturing Company, and J. Pincus, to collect unemployment compensation contributions from defendant Fred H. Lawton, and for the foreclosure of a lien, as provided by § 100, chapter 35, p. 129, Laws of 1945 (Rem. Supp. 1945, § 9998-238).

Defendant Lawton defaulted, and only defendant Pincus appeared in the action and answered plaintiff's complaint.

We shall not set out the pleadings, since the facts as found by the court were stipulated and the only question raised is whether or not, under those facts, the court erred in concluding that plaintiff was not entitled to a lien on certain property belonging to defendant Pincus.

The cause came on for hearing on February 15, 1946, at which time the following facts were stipulated:

"1. That at all times mentioned in plaintiff's complaint, defendant Fred H. Lawton did business as Western Millwork and Manufacturing Company at 2845—16th Avenue West, Seattle, Washington.

"2. That commencing October 1, 1943, and continuing throughout the period mentioned in plaintiff's complaint, defendant Lawton became indebted for contributions due the unemployment compensation fund of the state of Wash-

ington in the aggregate amount of $341.38. That on September 7, 1945 plaintiff entered judgment for said sum, together with interest, against said defendant in the above entitled action.

"3. That during June, 1944, all of the defendant Lawton's machinery was sold by the sheriff of King county under a chattel mortgage foreclosure instituted by the American Discount Corporation. That the division of unemployment compensation did not intervene in said foreclosure action, and took no steps whatever to assert its lien rights against Lawton's machinery and equipment.

"4. That on December 31, 1943, defendant J. Pincus was the owner of certain machinery and equipment described in exhibit B, attached to and made a part of plaintiff's complaint herein. That on said date he leased said machinery and equipment to defendant Lawton under a written lease for a period of two years, commencing February 1, 1944, at a monthly rental of $114.67. That defendant Lawton used Pincus' machinery and equipment, in conjunction with his own machinery and equipment, in his operations for the period beginning February 1, 1944, and ending April 5, 1944. That the contributions due the unemployment compensation fund for said period from Lawton was $188.41.

"5. That the rental due Pincus from Lawton was the fixed and stated sum of $114.67 per month above mentioned, and was in no wise dependent or conditioned upon Lawton's operations or his use of Pincus machinery and equipment. That defendant Pincus had no interest whatever in the operations or the results of Lawton's business, and that defendant Lawton had no right, title or interest in Pincus' machinery or equipment whatsoever, save and except for the aforementioned lease.

"6. That defendant Lawton defaulted in the payment of the rentals provided for in said lease, and that on or about April 6, 1944, defendant Pincus terminated said lease and took possession of his machinery and equipment.

"7. That on or about October 4, 1944, the office of unemployment compensation and placement filed notice of lien in the office of the auditor of King county, Washington, a photostatic copy of said lien being attached to plaintiff's complaint herein as exhibit B. That the name of Pincus is not mentioned, and nowhere appears in said notice of lien.

"8. That no contributions whatever are due from defendant J. Pincus to the unemployment compensation fund, and said Pincus is not indebted to the office of unemploy-

ment compensation and placement of the state of Washington in any amount whatever."

The court made the following conclusions of law:

"1. That plaintiff does not have, and is not entitled to assert, any lien rights whatever against the property of defendant Pincus, and that said defendant is entitled to a judgment and decree herein, declaring said lien to be null and void, and cancelling the same of record.

"2. That defendant is entitled to recover his taxable costs and disbursements herein from plaintiff."

The judgment entered in accordance with the findings and conclusions is in part as follows:

"It is by the undersigned hereby ORDERED, ADJUDGED AND DECREED that plaintiff's complaint herein be, and the same hereby is, dismissed as to defendant J. Pincus, and said defendant is hereby awarded his taxable costs and disbursements herein incurred against plaintiff.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff does not have, and is not entitled to assert, any lien rights whatever against any property of defendant Pincus to enforce payment of any contributions due from defendant Lawton to the unemployment compensation fund of the state of Washington and the notice of lien filed by the office of unemployment compensation and placement of the state of Washington in the office of the auditor of King county, Washington, on October 4, 1944, bearing reception No. 2050885, a photostatic copy of which is attached to plaintiff's complaint and made a part thereof, is hereby cancelled and declared to be null and void and of no force or effect whatever."

The state has appealed from the judgment entered and has assigned error on the holding of the trial court that appellant's lien did not attach to the machinery and equipment owned by the respondent and used by defendant Lawton in the operation of his business, and in dismissing the action as to respondent.

The following question is presented: Is machinery and equipment leased to an employer by a third person at a fixed monthly rental, which is in nowise dependent on the employer's operations, and used in the operation of such employer's business, the employer having no financial in-

terest in such machinery and equipment, and the owner having no financial interest in the plant or business operated by the employer, subject to the lien provisions made for the collection of unemployment contributions?

We desire to first call attention to a misstatement in appellant's brief, which seems to have been accepted without question by respondent in his brief. Appellant states on page 9 of its brief:

"Appellant's lien is predicated upon the following statute. Rem· Rev. Stat., Section 9998-114 (b) 1943 Supp., provides: . . ."

Then follow the purported provisions of the statute mentioned. However, what appellant actually quotes is § 93, chapter 35, p. 124, Laws of 1945. Rem. Supp. 1943, § 9998-114b, above referred to, was § 10, chapter 127, p. 322, Laws of 1943. Chapter 127, p. 291, Laws of 1943, was expressly repealed by § 188, chapter 35, p. 150, Laws of 1945. Chapter 35, Laws of 1945, contained an emergency clause, and by § 192 of the act, p. 151, it became effective July 1, 1945. The complaint in this action was sworn to on August 1, 1945, and the summons and complaint was filed August 3, 1945, so it is apparent that, at the time the action was commenced, Rem. Supp. 1943, § 9998-114b, had been repealed, and chapter 35, Laws of 1945, was in force and effect.

Section 93, chapter 35, p. 124, Laws of 1945, contains almost the exact provisions of Rem. Supp. 1943, § 9998-114b, with certain additions, but in so far as that part of Rem. Supp. 1943, § 9998-114b, referred to and discussed in the briefs of both appellant and respondent is concerned, it is identical with § 93, chapter 35, Laws of 1945 (Rem. Supp. 1945, § 9998-231). We shall assume, therefore, that appellant was proceeding under chapter 35, Laws of 1945.

On this appeal, we are concerned with contributions for the period from February 1, 1944, to and including April 5, 1944, for which contributions appellant is claiming a lien on the property of respondent, used by defendant Lawton during the time last above set out.

Section 89, chapter 35, p. 122, Laws of 1945 (Rem. Supp. 1945, § 9998-227), provides in part:

"On and after January 1, 1938, to and including December 31, 1945, contributions shall accrue and become payable by each employer for each calendar year in which he is subject to this act at the rate of two and seven-tenths per centum of wages payable for employment occurring during each calendar year."

Section 100, chapter 35, Laws of 1945 (Rem. Supp. 1945, § 9998-238), provides:

"If after due notice, any employer defaults in any payment of contributions or interest thereon, the amount due may be collected by civil action in the name of the State of Washington, and the *employer* adjudged in default shall pay the cost of such action. Any lien created by this act may be foreclosed by decree of the court in any such action. . . ." (Italics ours.)

We now come to the particular section under which appellant claims it is entitled to a lien on the property of respondent Pincus.

Section 93, chapter 35, p. 124, Laws of 1945 (Rem. Supp. 1945, § 9998-231), provides in part:

"The claim of the Unemployment Compensation Division for any contributions, including interest thereon, not paid when due, *shall be a lien prior to all other liens, except taxes,* not only against the interest of any employer, *but against the interest of all others,* in the *plant, works, equipment, and buildings, improved, operated or constructed* by such employer, and also upon any products or articles manufactured by such employer. Said lien shall date from the commencement of the period with respect to which said delinquent contributions are due, and shall be prior to all other liens except tax liens. In order to avail itself of the lien hereby created, the Unemployment Compensation Division shall file with the County Auditor of the county in which such property shall then be situated a statement in writing describing in general terms the specific property upon which a lien is claimed and stating the amount of the lien claimed by the division. Any such lien claimed against the interests of others than the employers shall be filed within four months after the employer shall have made report of his payroll and shall have defaulted in the payment of his contributions thereon." (Italics ours.)

We are concerned on this appeal with the question of whether or not the words of the last-quoted section, *"but against the interest of all others in the plant, works, equipment and buildings, improved, operated or constructed* by such employer," created a lien against the property of respondent held and used by defendant Lawton under lease during the period from February 1, 1944, to and including April 5, 1944, Lawton alone being the employer liable for the contributions and having no interest in the property upon which the lien is claimed, other than by virtue of the lease.

■ In the case of *Bates v. McLeod,* 11 Wn. (2d) 648, 120 P. (2d) 472, we held that contributions exacted under the unemployment compensation act were excise taxes upon the privilege of employing others, citing authority.

■ The following statement will be found in 51 Am. Jur. 366-7, § 316:

"Although it is sometimes broadly stated either that tax laws are to be strictly construed or, on the other hand, that such enactments are to be liberally construed, this apparent conflict of opinion can be reconciled if it is borne in mind that the correct rule appears to be that where the intent or meaning of tax statutes, or statutes levying taxes, is doubtful, they are, unless a contrary legislative intention appears, to be construed most strongly against the government and in favor of the taxpayer or citizen. Any doubts as to their meaning are to be resolved against the taxing authority and in favor of the taxpayer, or, as it is sometimes put, the person upon whom it is sought to impose the burden."

Again, at page 882 of the same text, we find this statement:

"Tax liens are not to be extended by implication or enlarged by judicial construction. A tax is a lien on property only so far as expressly made a lien by the statute. It exists and attaches only according to such terms and conditions as are prescribed by the statute creating it."

We stated in *Home Owners' Loan Corp. v. Mitchell,* 195 Wash. 302, 81 P. (2d) 268:

"Assuming that the legislature may establish a state tax as a prior lien, such a legislative intent must clearly appear."

■ Appellant states in its brief that, in the exercise of its police power, the legislature is vested with a wide discretion, not only to determine what objects are subject to taxation, but the persons against whom the exaction is imposed; that its determination, when expressed in statutory enactment, cannot be questioned successfully, unless it is so manifestly arbitrary, unreasonable, inequitable, and unjust that it will cause an imposition of burdens upon one class to the exclusion of another, without reasonable distinction.

We agree with the above as a statement of the general rule.

Appellant then argues that the provision of § 93, chapter 35, Laws of 1945, with which we are here particularly concerned, is very essential to the purposes of the act as a whole, and that without such a provision collection of contributions to the fund would be extremely difficult in many cases.

May we say here that, if the facts in this case are typical of the cases with which the unemployment compensation division has to deal, then, in our opinion, the contention of the state that this provision is necessary is not warranted; for the statute gives a prior lien against the interest of the employer, and had the state in this case used due diligence, it would seem that there was ample property of the liable employer to which its lien attached and from which its claim could have been satisfied.

■ Appellant also argues that it is the general rule that every presumption is in favor of the constitutionality of a law or ordinance. We are in accord with that statement.

We also agree that the constitutionality of the unemployment compensation act has been upheld by this court in several cases, including *Shelton Hotel Co. v. Bates*, 4 Wn. (2d) 498, 104 P. (2d) 478, but the section now being considered has never been passed on by this court, nor, so far as we can determine, has the constitutionality of the section been construed by any other court.

Appellant then argues that § 93, *supra,* or at least so much thereof as we are here concerned with, is patterned after subd. (c), of Rem. Rev. Stat., § 7682 [P.P.C. § 717-9], which

was enacted in 1929, and will be found as subd. (c), § 4, chapter 132, p. 342, Laws of 1929, reading as follows:

"Separate and apart from and in addition to the foregoing provisions the claims of the state for payments and penalties due under this act [industrial insurance act] shall be a lien prior to all other liens, except taxes, not only against the interests of any employer, but against the interests of all others, in the real estate, plant, works, equipment and buildings improved, operated or constructed by any employer, and also upon any products or articles manufactured by such employer."

It is apparent that subd. (c) of Rem. Rev. Stat., § 7682, just quoted, is almost identical with that part of § 93, chapter 35, Laws of 1945, with which we are here concerned. Appellant in its brief, after setting out the provisions of subd. (c), states:

"In the case of *Barlow & Sons v. H. & B. Lumber Co.,* 153 Wash. 565, 280 Pac. 88, this court had occasion to pass upon this portion of the statute and in so doing, after setting forth the above quoted subdivision of the statute, said on page 578:

" 'The obvious intention of the last quoted enactment was for the purpose of making definite and certain the vague and uncertain language contained in the amendment of 1923.

" 'Apparently, the legislature has been anxious to avoid the possibility of depleting the industrial insurance funds and of continuing in effect the decision in the *Whitney* case, [*Whitney v. Page & Bolster Shingle Co.,* 116 Wash. 371, 199 Pac. 728], by the act of 1923.' "

While it is true that, in the *Barlow & Sons* case, *supra,* this court did refer to subd. (c), *supra,* and did make the quoted statements, it is not true that, in that case, this court actually passed upon the quoted statute. The orders from which an appeal was taken in the cited case were made and entered by the trial court on November 22 and December 7, 1928, respectively. The trial court, as is apparent, did not have before it subd. (c), as that subdivision was not enacted until 1929. The court did have before it § 3, chapter 136, p. 398, Laws of 1923, which read:

"The claim of the state for payments and penalties due herein shall be a lien prior to all other liens, except taxes, upon the real estate, plant, works, equipment and buildings improved, operated, or constructed by any employer, and also upon any logs, spars, piles, ties, or other timber produced or articles manufactured by such employer which shall be owned by or in the possession of any person liable for such premiums. . . ."

The *Barlow & Sons* case presented no constitutional question, but involved a question of priority of lien rights between the state for industrial insurance premiums and labor claimants. The employer was insolvent and all his assets were in the hands of a receiver, who contended that the state had no lien against the assets of the employer, as it had filed no claim of lien as provided by statute, but had only filed with the receiver its claim for the amount said to be due. We held that the state was entitled to a preference on its claim filed with the receiver against all the assets of the *insolvent,* without having filed a claim of lien against specific property. One of the contentions made by the receiver in the cited case was that the state had no lien upon all the funds in his hands, because some of it came from the sale of property covered by conditional sales contracts. This court answered the contention of the receiver as follows:

"The receiver took just such title as the insolvent had. [Citing authority.] Whatever interest he sold, was the interest of the insolvent. That interest was a conditional interest covered by the conditional sales contracts. When sold, the funds became general assets of the insolvent estate."

The reference to subd. (c), *supra,* was apparently made to justify the following statements found on p. 577 of the opinion:

"We agree with the contention of the state that the 1923 statute provides for two classes of liens: *those upon property operated and the specified products of the property operated;* and, those upon the entire assets in the hands of administrators, trustees, or receivers. In the former class the state may file its notice and proceed against the property, if it so desires, regardless of ownership." (Italics ours.)

The case of *Roeblings Sons Co. v. Frederickson L. & T. Co.*, 153 Wash. 580, 280 Pac. 93, is also cited by appellant. This case did not involve a claim of lien on the property of a third person, but the question presented was whether or not the lien of the state for industrial insurance premiums due from Frederickson Logging & Timber Co. was prior to a chattel mortgage given by the logging company to Western Cooperage Co. to secure a loan. The opinion states:

"Thereafter, in the latter part of the year 1927, the logging company becoming involved, a receiver was appointed. The only assets which the receiver took over were the tools, equipment, etc., covered by the chattel mortgage. The assets were thereafter sold by the receiver, and this dispute arises over the disposition of the money received therefor."

The case was decided August 27, 1929. The judgment of the trial court in the case had been made and entered on December 5, 1928, which was prior to the enactment of subd. (c), hereinbefore referred to. The opinion states:

"The sole question in the case involves the construction of the provisions of § 3, chapter 136, Laws of 1923, p. 373, the same being Rem. 1927 Sup., § 7682, which reads as follows: . . ."

The section is then quoted, and is the same section as was before the court in the *Barlow & Sons* case. Again, in the *Roeblings Sons* case we find a statement not necessary to a decision of the case and certainly not having any reference to the facts, for it does not appear but what all the property involved belonged to the liable employer.

"It does not seem to have been the intention of the legislature to change the law relating to insolvency, but rather to cover a condition not before covered, namely, the giving to the state a right to claim a lien upon the property used in extrahazardous work regardless of ownership."

Appellant also cites the case of *Tripp v. Niagara Logging Co.*, 178 Wash. 551, 35 P. (2d) 95. This action involved the question of priority of a lien of the state for industrial insurance premiums due from Niagara Logging Co. over chattel mortgage lien, loggers liens, towboat liens, and an attachment lien. The property affected belonged to the

Niagara Logging Co. and consisted of two rafts of logs and the logging and camp equipment described in the two chattel mortgages. The opinion states:

"It is conceded that, under subdivision (c), Rem. Rev. Stat., § 7682, the lien of the state, for payments and penalties due under the workmen's compensation act is superior to all other liens except taxes."

No question was raised or discussed as to the constitutionality of the section, and, the property involved being owned by the liable employer, no property of a third party was involved.

In none of the cases cited is the constitutionality of subd. (c), of Rem. Rev. Stat., § 7682, raised, and in none of the cases cited did this court hold that property wholly or in part owned by a third person was subject to a lien for industrial insurance premiums. However, in both the *Barlow & Sons* case and the *Roeblings Sons* case this court did make a statement to the effect that, under Rem. 1927 Sup., § 7682, the state was given a lien upon *property operated and the specified products of property operated, regardless of ownership.* In neither case was the above statement necessary to the decision, as no property of a third party was involved.

We have another case decided by this court which involved a construction of the same statute as was construed in the two cases last above referred to. However, in the case to which we shall now refer, it was sought to impress the lien of the state for unpaid industrial insurance premiums on the property of one other than the liable employer, and this court held the statute did not give to the state such a right. We refer to the case of *Finos v. Netherlands American Mtg. Bank,* 147 Wash. 86, 265 Pac. 167. Several questions were raised in the cited case, but we are here interested only in the claim of the state that it was entitled to enforce its lien for unpaid industrial insurance premiums against the interest of Netherlands American Mortgage Bank in certain mining property.

Subsequent to the taking effect of chapter 136, p. 373, Laws of 1923, the bank sold the premises in question to

appellant Cashman and wife upon a conditional sales contract, and on a later date Cashman and wife leased the properties to Wiero *et al.,* for the purpose of coal mining operations. The lessees thereafter formed a corporation, which employed workmen in the coal mining operations, and failed to pay the industrial insurance premiums thereon. The corporation having become insolvent, no premiums could be collected from it. The statute under which the state asserted its claim was § 3, chapter 136, Laws of 1923. The question presented was whether or not, under the statute, the claim of the state became a prior lien on the fee retained by the bank under the conditional sales contract.

While this court stated that to give effect to the contention of the state (appellant) would be to make the operation of the statute retroactive as to the bank, it then proceeded to consider the effect of a statute purporting to make the property of a third person liable for the premiums due from the employer. We quote from the opinion:

"The state further contends that it has the right under its police power to impose such liens upon any and all kinds of property in any and all kinds of contracts, including those in force at the time of the legislation providing therefor.

"We concede that the state has the right to impose liens and make them prior as to *other liens* against the same property under its police power. [Citing cases.] We do not think that, even under its conceded police power, the state has the right to *attach liability to the property of a third person,* unconnected with the operations out of which the state exacts premiums or payments for the protection of still other persons. Such, it seems to us, would be an unreasonable exercise of the state's police power." (Italics ours.)

The opinion then quotes from 37 C. J. 186:

" 'A statute or ordinance licensing or taxing an occupation or privilege must be reasonable in its terms and conditions; if it impose a license or tax in such a manner or upon such terms as to be unreasonable, oppressive, or in restraint of trade, it is void.' "

The opinion continues:

"While it is true that we are not here considering a statute or ordinance licensing or taxing an occupation or privilege,

or a taxing law, we are considering a law imposing a prior lien in the exaction of payments *for operations* under laws, under which operations and under which laws the respondent bank *derives no benefit*. The exercise of the police power of the state in respect thereto should, therefore, be reasonable or it would be void. While we can find no authority exactly fitting, we think reason and general principles contrary to the contention of the state." (Italics ours.)

At another place in the opinion, the court states:

"Unlike appellants Cashman, it [the bank] received no benefits, nor was it entitled to receive any benefits derived from the mining operations. It simply had an outstanding executory contract with the Cashmans, with title reserved as security."

It should be kept in mind that the statute considered by the court in the last-cited case provided in part:

"The claim of the state for payments and penalties due herein shall be a lien prior to all other liens, except taxes, upon the real estate, plant, works, equipment and buildings improved, *operated,* or constructed by any employer." (Laws 1923, chapter 136, § 3, *supra.*) (Italics ours.)

It is evident that, in the cited case, the mine was being *operated* by the liable employer, and still we held that the lien did not attach to the interest of the bank, the owner of the fee.

In so far as our search has revealed, Arizona is the only other state which has a provision in its unemployment compensation act similar to that part of § 93, chapter 35, *supra,* with which we are here concerned. We have been unable to find any case where this provision in an unemployment compensation act has been considered by the courts. So far as we have been able to discover, all of the states which have unemployment compensation acts, other than Washington and Arizona, confine the lien given for unemployment compensation contributions to the real and personal property of the liable employer. Even Oregon, which has a section in its industrial insurance act almost identical with § 93, *supra,* of our unemployment compensation act, does not give a lien for unemployment compensation contribu-

tions against the *interest of all others* in the real estate, plant, etc.

■ Having in mind what this court has said relative to the industrial insurance lien statute, and especially what was stated in the *Finos* case, *supra,* we have given considerable thought to what the legislature intended by the statement "against the interest of all others." It did not mean interest such as a lien claimant might have, for in the first part of the section the state is given a lien prior to *all others,* except taxes, against the interest of the liable employer. It must have been intended to refer to some interest to which a lien could attach. We can think of no interest which could have been intended other than the interest of an owner or part owner; and so construing the particular part of the section now under consideration, we are of the opinion it is unconstitutional, for the reason that it arbitrarily imposes a lien on property of one not liable for a tax, from which to satisfy the tax of a liable employer. It in effect requires a third party to pay the tax of a liable employer, without any provision for reimbursement. It seems to us that clearly the effect of this statute is to deprive the third party owner or part owner of his property without a hearing or due process of law, and is in contravention of the fourteenth amendment to the Federal constitution, and § 3, Art. I, of our state constitution.

We are entirely in accord with the principles announced in the case of *Knoxville Traction Co. v. McMillan,* 111 Tenn. 521, 77 S. W. 665, 65 L. R. A. 296, wherein the supreme court of Tennessee had before it an act making street and commercial railroad companies liable for the privilege tax impressed upon advertising companies conducting the business of advertising in the cars and stations of such companies. We quote part of the act:

"Provided that the street car company or railroad company who lease or sell such advertising privileges shall be liable for the payment of the above privilege."

The court, in holding that the act was unconstitutional, being in contravention of the fourteenth amendment to the Federal constitution, stated:

"The traction company and the advertising company are distinct and independent corporations, owing each other no duty or obligation, and having no interest in common. The former is engaged solely in operating a street railway, and the latter in the advertising business. The tax is imposed upon the business of advertising in street cars—a privilege exercised by the advertising company, and not by the traction company. It is not a liability of the traction company, but one of the advertising company. The only relation of the two companies is that the former is the creditor of the latter for the rent due it for the use of its cars for advertising purposes. The statute arbitrarily imposes upon the traction company liability for this debt of the advertising company, and requires it to pay it with its own means. This is a deprivation of property without a hearing or due process of law, clearly within the prohibition of the constitutional provisions relied upon. This is too obvious for argument, and the property of one citizen can no more be taken to pay a tax or public debt due from another than the private debt of such other person. . . .

"The complainant is not the debtor of the advertising company, and at no time, in due course of business, will have any of its assets in its hands or under its control, which it can apply to the payment of the tax imposed upon it. If required to pay this tax, it must do so out of its own property, without any provision for its reimbursement."

We are in entire accord with the statements contained in the above quotation. To hold that, under the statute in the instant case, the property of respondent can be taken to pay the tax owing by the liable employer, would be to deprive respondent of his property without a hearing or due process of law, and would offend not only against the fourteenth amendment to the Federal constitution, but also against § 3, Art. I, of our state constitution.

We conclude, therefore, that that part of § 93, chapter 35, Laws of 1945, which by its terms purports to create a lien prior to all other liens, except taxes, *against the interest of all others* in the plant, works, equipment, and buildings, improved, operated, or constructed by such employer, and also upon any products or articles manufactured by such employer, is unconstitutional and void.

■ Section 184, of chapter 35, p. 149, Laws of 1945, provides:

"If any provisions of this act, or the application thereof to any person or circumstances, is held invalid, the remainder of the act and the application of such provision to other persons or circumstances shall not be affected thereby."

We stated in *Unemployment Compensation Dept. v. Hunt,* 17 Wn. (2d) 228, 135 P. (2d) 89:

"An act cannot be declared unconstitutional in its entirety by reason of the fact that some one or more of its provisions is unconstitutional, unless the constitutional and unconstitutional provisions are unseverable and are so intimately connected and interdependent in their meaning and purpose that it could not be believed that the legislature would have passed the one without the other, or unless the part eliminated is so intimately connected with the remainder of the act that the elimination would render the remainder incapable of accomplishing the purposes of the legislature."

We are of the opinion that our conclusion that part of § 93 is unconstitutional and void will not affect the purpose or the application of the other provisions of the act, and we are particularly convinced that such conclusion will not seriously, if at all, hinder the state in the collection of unemployment compensation contributions due, inasmuch as a claim of the unemployment compensation division for any contributions not paid when due will still be a lien prior to all other liens, except taxes, against the *interest of any employer* in the plant, works, equipment, and buildings, improved, operated, or constructed by such employer, and also against the interest of any employer in any products or articles manufactured by such employer. The protection thus given to the state and the means afforded for satisfying the lien provided by the statute are, it seems to us, ample to secure the ends sought by the act.

The following language in the *Hunt* case, *supra,* is we think, applicable to the situation here presented:

"Moreover, we do not believe that, if the legislature had thought that this one provision would be declared uncon-

stitutional, it would have hesitated for an instant to pass the remainder of the act."

For the reasons herein assigned, the judgment of the trial court is affirmed.

BEALS, C. J., BLAKE, ROBINSON, and STEINERT, JJ., concur.