In re ROCKAWAY SODA WATER MFG. CO.

(District Court, E. D. New York. May, 1915.)

BANKRUPTCY ⊜➔166—RECOVERY OF ASSETS BY TRUSTEE—MONEY FRAUDU-
LENTLY PAID ON DEBT OF ANOTHER.

One who refused to lend money to a corporation on application of
its officers, but. instead lent it to them individually, taking their note
therefor, and who ₍was paid by checks of the corporation when it was
insolvent and immediately preceding its bankruptcy, *held* not to have
been a creditor of the corporation, but to have received the money with
knowledge that it was funds of the corporation being improperly used to
pay the debt of others, which entitled the trustee to its return as part of
the assets of the bankrupt estate.

⌊Ed. Note.—For other cases, see Bankruptcy, Cent. Dig.· §§ 250–253,
255–258; Dec. Dig. ⊜➔166.]

In Bankruptcy. In the matter of the Rockaway Soda Water Manu-
facturing Company. On order to show cause why money received from
funds of bankrupt corporation just before petition was filed should not
be returned. Order for return of money.

Barnett & Jablow, of New York City, for trustee.
Samuel Hoffman, of New York City, for Rubin Feigenbaum.

CHATFIELD, District Judge. On an order to show cause why the
sum of $300, received by check from the funds of the bankrupt cor-
poration just before a petition was filed against that corporation, should
not be paid back by one Feigenbaum, reference has been had, and a
special master has reported at length as to the facts and his conclusions.

But one question is now presented. The corporation apparently had
no substantial commercial standing and was in need of cash to buy sup-
plies. Two of its officers attempted to borrow money for that purpose
from Feigenbaum, who refused to advance the money to the corpora-
tion, but told the officers he would loan the money to them personally
for the corporation's use. He did so, taking their notes, and gave his
check for the loan, which was indorsed by the two officers and immedi-
ately deposited in the corporation's bank account. For three months,
$100 a month was paid back on account of this loan, and the trustee in
bankruptcy seeks to recover this $300 on the ground that it was proper-
ty of the corporation misappropriated to pay individual debts, and
therefore traceable into the hands of those parties who, knowing the
corporation's financial position, were parties to the wrongdoing of the
officers, who were diverting the corporation's funds to their personal
use.

The last proposition is not open to argument. It is a fraud upon the
creditors of a corporation for persons, having information which puts
them upon inquiry, to share or assist in the acts of an officer or director
of that corporation who is looting the treasury of the corporation. To
take the funds of an insolvent to pay the debts of a third party, where
no equivalent is given to the insolvent, is evidently a fraud. As between
the insolvent and its director or officer, the transaction might be only a

⊜➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

preference, if the director or officer also bore the relation of a creditor. In the present case, Feigenbaum alleges that he was really a creditor of the corporation, and therefore that the payment to him was at most preferential. He insisted upon the right to defend himself in a suit against the claim of preferential payment and denies the allegation of fraud.

But the conclusion of the special master and the testimony negative his claim. Feigenbaum was unwilling to be a creditor of the corporation. He insisted upon making an independent loan to the two officers, as individuals, and the fact that he knew they were going to make some arrangement with or apply the money to the use of the corporation does not change his contract with these two men. When his loan was paid with corporation funds, he knew that money charged to the account of these two officers was being used by them to pay his debt. The source of this money made no difference, so far as the discharge of the debt between him and his debtors was concerned; but if he had knowledge that the funds were tainted with fraud, or that his creditors had no title to the funds, he could not obtain a good title himself by showing the existence of the original debt. Much less could he obtain good title by attempting to shift his position, and claim that the corporation had had the benefit of the loan, and therefore was the real debtor. If the two officers had assigned or transferred to Feigenbaum the rights which they had against the corporation, or so much of their claim against the corporation's funds as would pay his debt, he would be subject to all the disabilities which rested upon them.

This might leave open for discussion no question except that of preferential payment, for the assignment of the debt would have made it impossible to charge misuse of the corporate funds to pay a private obligation. But in this instance the creditor did not take an assignment, but accepted a check drawn directly by the corporation to himself. He therefore assumed at the time all the responsibility involved in exchanging the primary obligation of the two officers who borrowed the money, for a check of the corporation. He thus made the officers who borrowed the money merely indorsers or sureties of the debt and of the right to use the corporate funds for this purpose. His claim that the debt was really owed by the corporation entirely destroyed his defense of lack of knowledge of the corporation's position, and the testimony would seem to support the finding of the commissioner that he took these payments with knowledge of the fact that the officers were using corporate funds to pay their individual debt, when the corporation was in such financial circumstances that they had no right so to do.

The report directing Feigenbaum to repay the sum of $300 will be confirmed, but the amount of the dividend on the claim of Keller & Peller (officers of the bankrupt) may be deducted, if they have been subrogated to the rights of Feigenbaum, and if they had any provable claim for the loan.