[No. 21925. Department One. August 27, 1929.]

C. S. BARLOW & SONS, *Plaintiff*, v. H. & B. LUMBER COMPANY, *Defendant*.

THE STATE OF WASHINGTON, *Appellant*, v. H. H. BJORKLUND, *as Receiver, Respondent*.[1]

[1]Reported in 280 Pac. 88.

566

*The Attorney General, Harry Ellsworth Foster, Assistant,* and *Chas. O. Flint,* for appellant.

*H. W. Lueders,* for respondent Bjorklund.

*G. P. Fishburne,* for co-respondents Dodge *et al.*

HOLCOMB, J.—From January 1, 1927, to July 31, 1928, the H. & B. Lumber Co., a corporation, was engaged in extrahazardous operations in which workmen were employed in its plant at Elbe, in Lewis county, Washington. During that time, it incurred a debt for premiums and alleged penalties, due the state for the benefit of its accident and medical aid funds, amounting to $1,587.61, upon which it paid, from time to time, sums amounting to $763.99, leaving a balance due, including penalties, of $823.62.

On about July 24, 1928, the corporation was adjudged insolvent, and respondent, Bjorklund, was appointed, and thereafter duly qualified, as the receiver in the superior court of Pierce county, Washington. Pursuant to an order of that court on July 27, 1928,

the receiver gave notice to creditors to file their claims within ninety days thereafter or be forever barred. A large number of claimants filed their claims, including the industrial insurance department of the state, which, through its supervisor, filed its claim for $823.62. The insolvent company had filed its payroll reports for March, April, May and June with the department, and the pay roll from July 1 to July 24 was audited by the department about the first of September, 1928. Its claim was filed with the receiver on September 18, 1928, in which it claimed $751.01 for premiums and the balance as penalties.

A number of laborers had filed claims of liens, aggregating $2,153, with the auditors of Pierce and Lewis counties, and served same on the receiver, and alleged their claims to be preferred. George Dodge and fifteen other labor claimants were represented by their counsel, Mr. Fishburne, whose claims aggregated $1,266.28, without costs, and claims of $100.95 for attorney's fees and auditor's filing fees.

On November 14, 1928, the receiver filed his report and an order was entered directing notice to be given to all creditors to appear on November 21, 1928, and file objections, if they desired, to the claims which had been filed. Notice of this hearing was given by the receiver and his attorney by mail, the affidavit which constituted proof of service showing that the notices were sent by mail on November 15. The notice to the department was directed to ''Washington Industrial Insurance Department, Mr. Shaughnessy, Chief Clerk, Olympia, Washington.'' This mailed notice to the department, for some reason best known to it, was disregarded and not referred to the *Attorney General,* its attorney. It was, however, at or about the time of the hearing on the receiver's report, discovered as having been received on November 17.

On November 21, 1928, in accordance with the previous order and notice, the court proceeded to hear and determine the validity of the state's preference. No one was present representing the state at that hearing. On November 22, 1928, the decree of the court was entered allowing the claim of the state in the sum of $823.62 as a general claim, but denying it preference,

". . . for the reason that no lien notice was filed by the industrial insurance department, as required by statute, in Lewis county, Washington, which would entitle it to a lien or preference over the labor claims or any claims of H. & B. Lumber Co."

Upon information being received of the above decree on the following day, November 23, the state, by its duly authorized officer, filed its verified petition, wherein, in certain paragraphs, it is alleged that the decree of November 22, 1928, is erroneous in law, and that the state's claim is a prior lien claim, and prayed for vacation of the judgment. The petition was supported by affidavit of the proper official, and the court issued a temporary restraining order, and directed the receiver to show cause on December 7, 1928, why the claim of the state should not be allowed as a preference. On December 7, the trial court, upon motion of the receiver, refused to hear the petition upon its merits, and entered an order denying the same because of its insufficiency to justify the court in further continuing the restraining order.

The state thereupon, in open court, gave oral notice of appeal to this court from the decree entered November 22, and also the order of December 7, 1928.

Upon appeal, the state claims error in the making of conclusions of law by the court denying the state a preferred lien or claim over the labor claims or any other claims of the insolvent, and in deciding that the petition to vacate the judgment was insufficient in law to

set aside the judgment and continue the restraining order. It is also contended that the court erred in refusing to vacate its decree of November 22, 1928, and entertain the petition of the state upon its merits.

Much of the controversy here is waged upon questions of procedure. Dodge and fifteen other labor claimants appearing with him move to dismiss the appeal of the state upon the ground that no appeal could be taken from the decree of November 22, 1928, by oral notice in court at the hearing on December 7, 1928, upon a petition to vacate that decree.

If the petition to vacate that decree was sufficient and appropriate, the oral appeal from the order denying and dismissing the petition would be sufficient to bring up for review the decree of November 22.

The sworn petition to vacate the decree of November 22 recites, first, that no notice of hearing on the final report had been served upon it or its attorneys; second, that the receiver was about to dispose of the assets to the great detriment of the state; and third, that the order of the court as entered was erroneous in law. The petition also asked for a temporary injunction to restrain distribution of those assets and for a show cause order requiring the receiver to appear and show cause why the judgment should not be vacated.

Rem. Comp. Stat., § 464, subd. 3, provides that a judgment may be set aside for ''irregularity in obtaining the judgment or order.'' Section 467, prescribes that the facts constituting such ground for a vacation must be set forth by a petition verified by affidavit.

Under those sections, *supra*, appellant set forth irregularity in obtaining the decree of November 22 for lack of any notice, or insufficient notice.

Appellant then cites Rem. Comp. Stat., § 242, re-

lating to the manner of commencing actions and notices to be served thereafter upon parties who have appeared therein, which provides that, if neither such party nor his attorney reside in the county in which the action or proceeding is pending or where such application or motion is made, at least ten days' notice of such hearing, if given by mail, is required.

It will be observed that, in the present case, only six days' notice by mail was given. Respondents claim, however, that these sections relate only to the manner of commencing actions and notices thereafter, and in no wise pertain to notices to be given in receivership matters. It is argued that appellant received as much notice as any other creditor or party in the receivership matter, and did, in fact, as was admitted, receive notice of the hearing on November 17. However, appellant did not rely wholly upon irregularity in proceeding by lack of any or sufficient notice. It relied also upon error of law appearing in the decree which would give it the right to have the decree set aside for such error under Rem. Comp. Stat., § 399, subd. 7.

That section among other things provides:

"The former verdict or other decision may be vacated and a new trial granted, on the motion of the party aggrieved, for any of the following causes materially affecting the substantial rights of such party:

. . .

"7. Insufficiency of the evidence to justify the verdict or the decision, or that it is against law; . . ."

We are convinced that appellant proceeded as suggested by this court in *Belles v. Carroll*, 6 Wash. 131, 32 Pac. 1060, and that the petition to set aside the decree was sufficient and appropriate under our decisions in *In re Force*, 113 Wash. 151, 193 Pac. 698; *State ex rel. Cole v. Blake*, 123 Wash. 336, 212 Pac. 549; *Baer v. Lebeck*, 126 Wash. 576, 219 Pac. 22.

Hence, we conclude that the appeal from the order dismissing the petition to set aside the decree of November 22, taken orally on December 7 in open court, was sufficient to bring here for review both the final order upon the petition and the decree.

 Respondents also move to dismiss the appeal upon the ground that there were twenty-one other labor claimants in this case who had presented their claims, which had been allowed, and who were not present or represented in court at the time of the hearing on appellant's petition to set aside the decree when the oral notice of appeal was given and there is no record of any other notice of appeal or of any written notice of appeal having been served upon them.

Those twenty-one claimants were not in court when the petition to vacate was heard, were not parties specially appearing therein, and, if represented at all, were represented by the receiver. In *Radebaugh v. Tacoma & Puyallup R. Co.*, 8 Wash. 570, 36 Pac. 460, we held that in such a proceeding the statute requiring all parties not joining in the appeal to be served with notice is complied with by service upon the receiver who is the representative of all the creditors.

*Cole v. Washington Motion Picture Corporation*, 112 Wash. 548, 192 Pac. 972, relied upon by respondents is not apt. In that case, an appeal was taken from a judgment making awards and fixing priorities after a contest which had been presented by parties who were not served with the appeal notice. That is not the case here.

We conclude that the motions to dismiss the appeal are not well-founded.

 Nor is a motion by the receiver to strike the statement of facts because not served on those twenty-one claimants, well-founded.

Upon the merits, the statute in force, governing such a claim as that involved here, was enacted in 1923 (Laws of 1923, p. 397, § 3), and is now codified in Rem. 1927 Sup., § 7682, which reads:

"If any employer shall default in any payment to the accident fund or the medical aid fund, the sum due shall be collected by action at law in the name of the state as plaintiff, and such right of action shall be in addition to any other right of action or remedy. If such default be after demand, there shall also be collected a penalty equal to twenty-five per centum of the amount of the defaulted payment or payments.

"The claim of the state for payments and penalties due herein shall be a lien prior to all other liens, except taxes, upon the real estate, plant, works, equipment and buildings improved, operated, or constructed by any employer, and also upon any logs, spars, piles, ties, or other timber produced or articles manufactured by such employer which shall be owned by or in the possession of any person liable for such premiums. The lien hereby created shall attach from the date of the commencement of the labor upon such property for which such premiums are due. In order to avail itself of the lien hereby created, the department shall, within four months after such employer shall have made report of his pay-roll and shall have defaulted in the payment of his premiums thereupon, file with the county auditor of the county within which such property shall then be situated a statement in writing describing in general terms the property upon which a lien is claimed and stating the amount of the lien claimed by the department. If any employer shall fail, delay or refuse to make report of his pay-roll the lien hereby created shall continue in full force and effect although the amount thereof be undetermined and the four months' time within which the department shall file its claim of lien shall not begin to run until the actual receipt by the department of such pay-roll report. From and after the filing of such claim of lien, the department shall be entitled to commence suit to cause such lien to be foreclosed in the manner pro-

vided by law for the foreclosure of other liens on real or personal property.

"All actions for the recovery of such payments shall be brought in the superior court and in all cases of probate, insolvency, assignment for the benefit of creditors, or bankruptcy, the claim of the state for payments due herein shall be a lien prior to all other liens, except taxes, and it shall be the duty of all administrators, receivers or assignees, for the benefit of creditors to notify the department of such administration, receivership or assignment within thirty (30) days from the date of their appointment and qualification. In any action or proceeding brought for the recovery of payments due upon the pay-roll of an employer, the certificate of the department that an audit has been made of the pay-roll of such employer pursuant to the direction of the department and of the amount of such pay-roll for the period stated in the certificate shall be *prima facie* evidence of such fact."

Respondents argued, and the trial court concurred with them, that, since, admittedly, no liens were filed by the state where the property was situated, in Lewis county, at the time of its operation, no lien exists under the latter part of the section quoted, which prescribes that, in cases of probate, insolvency, assignment for the benefit of creditors, or bankruptcy, the claim of the state for payments due thereunder shall be a lien prior to all other liens, except taxes, and making it the duty of all administrators, receivers or assignees for the benefit of creditors, to notify the department of such administration, receivership or assignment within thirty days from the date of their appointment and qualification. They contend that the statute must be strictly construed, and that, since other statutes, Rem. Comp. Stat., §§ 1149 to 1153, incl., provide for preferred liens in favor of laborers performing labor upon such property within a prescribed time and § 1153, *supra,* requires all receivers and assignees to pay all

such claims for which a lien could have been filed under the preceding provisions before the payment of any other debts or claims other than operating expenses, it cannot be concluded that the state would be given the right to a preferred claim under the last provision of § 7682, *supra*, without having previously filed a lien as prescribed in the first portion of that section.

Respondents rely upon *Scandinavian American Bank v. King County*, 92 Wash. 650, 159 Pac. 786, a case involving liens for state and county taxes under certain statutes. In that case, statutes were involved which created liens upon real property and upon specific personal property charged from the date of the assessment. Other statutes provided for the transfer of the lien of personal taxes to designated real estate to be selected by the county treasurer, when, in the opinion of the county treasurer, it became necessary to charge such personal property tax against such real property in order that such personal property tax might be collected.

Under the statutes there involved, it was said that:

"Manifestly the lien for delinquent personal taxes does not attach to real estate prior to the time specific real property is selected by the county treasurer and he has charged it by proper entry upon the tax rolls, and then only when the property is owned by the person owing the delinquent personal property tax. Not until then is such real estate (real property *owned* by the person etc.) 'chargeable therewith.'"

We also there said that:

"The state has an undoubted power to create a priority of lien in aid of its taxing power . . . but the general rule is that such priority will not be indulged unless sustained by some positive statute; it will not be sustained by resort to construction."

Respondents fix upon the language last quoted, and argue that, unless resort to construction is had under

the statute before us and we construe into the latter part of the section something not in it, but which is in the forepart of the section, appellant cannot prevail.

Appellant makes two contentions: (1) That the act itself does not expressly provide that a lien notice shall be filed in insolvency cases; and (2) that the history of the industrial insurance law shows that it was not the intent of the legislature that such a notice should be filed in such cases, the lien provisions being intended to apply to properties over which a receiver had no jurisdiction.

We prefer to discuss the second contention first.

The original industrial insurance act of 1911 (Laws of 1911, p. 345, ch. 74 *et seq.;* Rem. Comp. Stat., § 7673) contained no provision for the enforcement of liens for premiums, and a claim for such premiums as a preference was denied in a bankruptcy proceeding, because the statute (Federal Bankruptcy Act, § 64a) did not then support such a preference since it was not so authorized under the state statute. *In re Farrell,* 211 Fed. 212.

Our state legislature forthwith amended the act, Laws of 1915, p. 687, ch. 188, to provide that, in all cases of insolvency, assignment for the benefit of creditors, or bankruptcy, the claim should be a claim prior to all other claims except taxes and providing also for penalties against defaulting employers.

The act was again amended, Laws of 1917, p. 487, ch. 120, § 5, to require bonds from defaulting employers and providing for injunctions to restrain operations in cases of failure to pay the premiums. That amendment also provided against sales and transfers of an employer's property while in default. The provision creating a prior claim in insolvency cases was left as it was in 1915.

In 1923, as set out in the copy of the statute herein, for the first time, there were included provisions in the amendment there enacted to the effect that the state should file a lien within four months after such employer should have made report of his payroll, and have defaulted in the payment of his premiums thereon, with the county auditor of the county within which such property shall then be situated,

". . . upon the real estate, plant, works, equipment and buildings improved, operated, or constructed, by any employer and also upon any logs, spars, piles, ties or other timber produced, or articles manufactured, by such employer which shall be owned by or in the possession of any person liable for such premiums."

The 1923 act also made its provisions applicable to probate matters, as well as insolvency and bankrupt matters. The provision creating a prior claim in insolvency cases was left as it was in 1915 and 1917.

The 1917 act was construed by us in *Whitney v. Page & Bolster Shingle Co.*, 116 Wash. 371, 199 Pac. 728, where the property was in the hands of a receiver, no lien notice had been filed by the state for premiums due and defaulted, and we held that the state had a prior lien without the filing of any claim of lien in the county in which the labor was performed.

The provision in the 1923 act, relating to insolvency in bankruptcy proceedings, is the same now as it was in the 1917 act, except that the word "claim" has been changed to the word "lien" in the 1923 amendment.

The legislature, when enacting the 1923 amendment, undoubtedly did so having full cognizance of the decision of this court in the *Whitney* case, *supra,* and of the practice thereunder. The legislature was doubtless satisfied with the construction of the act by the court and the department.

As to appellant's first contention, above stated, it is argued that a reading of the statute quoted shows that there are two liens provided for in the act: first, a lien upon specific property "improved, operated or constructed" by an employer and upon "logs and articles produced and manufactured" by an employer where possession is in certain named persons. The second lien is that in probate, insolvency and bankruptcy cases. It is also insisted that the lien notice which must be filed within four months after the receipt of payrolls, in cases where a lien is claimed upon property operated, improved or constructed, is one authorized because the title to such property may or may not be in the employer. It is maintained that that part of the act can have no application to property *owned* by an employer unless such owned property were, in fact, used in the extrahazardous operations where the debt arose.

We agree with the contention of the state that the 1923 statute provides for two classes of liens: those upon property operated and the specified products of the property operated; and, those upon the entire assets in the hands of administrators, trustees, or receivers. In the former class the state may file its notice and proceed against the property, if it so desires, regardless of ownership.

To hold that the state's lien must be filed in both cases, is to restrict the state to liens upon specific property and provide no liens upon general assets.

That the above was the intention of the legislature, is borne out by its own amendment to the law, Laws of 1929, p. 341, ch. 132, § 4. That act continues in effect the provisions relating to probate, insolvency, assignments for the benefit of creditors, or bankruptcy, as theretofore existing since 1923, re-enacts that such

claims shall be liens prior to all other liens, except taxes, and in subdivision (c) of that section prescribes as follows:

"Separate and apart from and in addition to the foregoing provision the claims of the state for payments and penalties due under this act shall be a lien prior to all other liens, except taxes, not only against the interests of any employer, but against the interest of all others, in the real estate, plant, works, equipment and buildings improved, operated or constructed by any employer, and also upon any products or articles manufactured by such employer."

The obvious intention of the last quoted enactment was for the purpose of making definite and certain the vague and uncertain language contained in the amendment of 1923.

Apparently, the legislature has been anxious to avoid the possibility of depleting the industrial insurance funds and of continuing in effect the decision in the *Whitney* case, *supra*, by the act of 1923. See, also, *In re Taylor Logging & Lumber Co.*, 28 Fed. (2d) 526.

The last cited case, being a case under the Federal bankruptcy law prior to the amendment thereto of 1926, recognized the probable correctness of the decision here reached in a state court.

We conclude that the state is entitled to a preference on its claim against all the assets of the insolvent without having filed a lien against specific operating property.

The receiver further contends that the state has no lien upon all the funds in his hands because some of it came from the sale of property covered by conditional sales contracts.

The receiver took just such title as the insolvent had. *Waples v. Sergeant*, 120 Wash. 63, 206 Pac. 945; *Finos v. Netherlands American Mortgage Bank*, 147

Wash. 86, 265 Pac. 167. Whatever interest he sold, was the interest of the insolvent. That interest was a conditional interest covered by the conditional sales contracts. When sold, the funds became general assets of the insolvent estate.

One other matter remains to be considered.

Inasmuch as the trial court, by its dismissal of the petition to set aside the decree of November 22, 1928, received no evidence, no proof was made that demand had been made of the insolvent corporation of the premiums due, prior to its adjudication of insolvency. Under the statute, if demand had been made and payment withheld, penalties would attach. Apparently it was conceded that the total amount of the claim of the state, in the sum of $823.62, was good as a general claim against the insolvent and was not questioned as to the premiums. The receiver had, however, applied to appellant for a remission of penalties or some showing as to why the penalties should be exacted, which was disregarded by appellant.

Since the record is unsatisfactory and incomplete on this one phase, the cause will be reversed with the option to appellant of either waiving the penalties in excess of $751.01, the total amount of the balance of premiums due less penalties, or of proceeding in the lower court within thirty days after the remittitur goes down, on a day to be fixed by that court, to prove that demand had been made upon the insolvent prior to July 24, 1928, for the payment of the premiums due. In case of proving that the demand had been made, appellant is entitled to the penalties as well as the premiums. If it had not been made, or it sees fit to waive the same in this case, judgment may be entered for $751.01, the amount of the premiums then due, without the twenty-five per cent penalties, immediately upon the filing of the remittitur below.

Reversed and remanded with instructions to proceed in accordance with this opinion.

MAIN, TOLMAN, BEALS, and FULLERTON, JJ., concur.