**ONYEBUCHIM ONYEANUSI, et al.**

**v.**

**PAN AMERICAN WORLD AIRWAYS, INC. and Videon Funeral Home.**

**Civ. A. No. 88–6967.**

United States District Court, E.D. Pennsylvania.

Oct. 19, 1990.

John Wendell Beaves, Philadelphia, Pa., for plaintiffs.

Thomas Bracaglia, Philadelphia, Pa., for defendants.

## MEMORANDUM

LUDWIG, District Judge.

Plaintiffs petition for reconsideration of order dated June 13, 1990 granting defendant Pan American World Airways, Inc.'s motion for summary judgment. Fed.R.Civ.P. 56, 59(e).

Summarized, plaintiffs' contentions are as follows: 1. The Warsaw Convention does not govern the transportation of human remains inasmuch as they should not be classified as "marchandises"—i.e., goods; 2. If the Convention does apply, Pan Am's liability is not subject to limitation as it is based on an intentional tort; and 3. Plaintiffs were not required to give timely notice of the damage since Pan Am had actual notice.

These issues were discussed in the memorandum filed upon the entry of summary judgment. *Onyebuchim Onyeanusi v. Pan American World Airways*, 1990 WL 84774 (E.D.Pa.1990). After reviewing them further, the petition for reconsideration will be denied.

■ The Warsaw Convention is an international treaty designed to obtain uniformity among international air carriers in

transportation transactions. It applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire." Art. 1(1). The Ninth Circuit, the only Court of Appeals to have considered an action involving human remains, interpreted Article 1 to mean "that the Convention applies to *all* cases in which an aircraft is hired to transport someone or something on an international route." *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 723 (9th Cir.1987). (Emphasis in original.) In the belief that the Convention signatories did not intend to expose air carriers to liability merely because the item was not readily classifiable under Article 1, *Johnson* concluded that human remains "must be treated as 'goods' for purposes of the convention." *Id.*[1]

The Convention itself so provides, in Article 24(1): "[I]n the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." Article 18 concerns destruction or loss of or damage to any checked baggage or goods, and Article 19, damage from delay in the transportation of passengers, baggage or goods. "One delegate considered [Article 24(1)] to be 'the very substance of the Convention, because it excludes recourse to common law' for a cause of action against the carrier." *Boehringer–Mannheim Diagnostics, Inc. v. Pan Am World Airways, Inc.*, 737 F.2d 456, 459 (5th Cir.1984) (citing *Minutes of the Second International Conference on Private Aeronautical Law, October, 1929, Warsaw* 213, R. Horner & D. Legrez trans. 1975). In return, Article 19 establishes a presumption of the air carrier's liability.

■ Cases holding that the Convention was not the exclusive remedy in an action for damages do not delimit the scope of Article 1(1).[2] One district court has considered a factually similar damage claim involving delay in the transportation of a deceased's remains from Houston, Texas to Pakistan. In *Tarar v. Pakistan International Airlines*, 554 F.Supp. 471, 478 (S.D. Tex.1982), there is dictum "agree[ing] with the contention of plaintiff's that human remains are not 'persons, baggage, or goods' within the meaning of Article 1(1)." However, this bench decision for plaintiffs rests on the Convention's willful conduct exception under Article 25:

> [T]he Defendant's failure and refusal to unload the casket from the aircraft with dispatch and to expedite its continued transportation to Pakistan constituted willful acts and omissions for which Defendant PIA is liable without regard to any limitation of liability under the Warsaw Convention.

554 F.Supp. at 479.

Plaintiffs theorize that human remains are not "goods" in part because the Convention's liability limits could have been drafted so as to encompass explicitly and without question all items brought on board the aircraft. "[T]he better, cleaner construction is that the drafters could have used the term 'persons or things' if it was their intention to be so interpreted." Pltfs. brief at 2.

"In interpreting a treaty it is proper, of course, to refer to the records of its drafting and negotiation." *Air France v. Saks*, 470 U.S. 392, 400, 105 S.Ct. 1338, 1343, 84 L.Ed.2d 289 (1985). *See also Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 35 (2d Cir.1975) ("[I]n interpreting a treaty we

---

**1.** Absent a decision by its Court of Appeals and a conflict between circuits, a district court should regard the authority of another circuit as "highly persuasive." 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.402[1] (2d ed. 1988). *See King v. United States*, 10 F.Supp. 206, 209 (D.Md.), *aff'd* 79 F.2d 453 (4th Cir. 1935).

**2.** *See, e.g., Abramson v. Japan Airlines Co., Inc.*, 739 F.2d 130 (3d Cir.1984) (aggravation of plaintiff's preexisting medical condition not an "accident" under the Convention); *Schmidkunz v.*

*Scandinavian Airlines System*, 628 F.2d 1205 (9th Cir.1980) (airline not liable under Convention for alleged negligence in operation of moving walkway where passenger still within the common passenger area of the airport terminal, had not yet received boarding pass, was not imminently preparing to board, and not at the time under direction of the airline's personnel); *Hill v. United Airlines*, 550 F.Supp. 1048 (D.Kan. 1982) (Convention did not bar lawsuit for misrepresentation because allegations related to intentional tort).

may look to its legislative history"); *Block v. Compagnie Nationale Air France,* 386 F.2d 323, 336 (5th Cir.1967) ("[T]he determination in an American court of the meaning of an international convention drawn by continental jurists is hardly possible without considering the conception, parturition, and growth of the convention"). The Convention was promulgated in French. In assessing the validity of appellant's claim, "we are required to determine the French legal meaning of the Convention's terms." *Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462, 1470 (11th Cir.1989).

As plaintiffs stress, the word used in Article 1 and throughout the original Convention is "marchandises"—defined as "merchandise, commodity; goods, wares, commodities." Cassell's French Dictionary (revised 1981). Plaintiffs argue that "marchandises" refers only to commercial transactions. "Supporting this is the absurdity of the situation where the value of *any* thing lost or damaged is governed by its physical weight." Pltfs. brief at 2. (Emphasis in pltfs. brief). However, this has not been the approach of American courts. *See Jahanger v. Purolator Sky Courier,* 615 F.Supp. 29 (E.D.Pa.1985) (Convention applies to delay of legal documents); L.B. Goldhirsch, *Warsaw Convention Annotated: A Legal Handbook* 8 (1988). A decision of a French court is *contra: Djedraoui v. Tamisier,* 1953 RFDA 494 (Trib. Paix Paris, 31 March 1952) (human remains are not "marchandises").

While numerous references in the Convention suggest that the drafters intended "marchandises" to mean commercial items,[3] there is nothing in the minutes that would exclude commercially valueless cargo. Plaintiffs' literal reading of "marchandises" would avoid the Convention's limitation of liability in such cases. However, "[t]he terms of the Convention must be construed broadly in order to advance its goals." *Floyd v. Eastern Airlines,* 872 F.2d at 1473.

The conference at Warsaw had two goals. First, to establish uniformity as to documentation such as tickets and waybills, and procedures for dealing with claims arising out of international transportation. *See Minutes* at 85, 87. The second, and more important at the time, goal of the conference was to limit the potential liability of air carriers in the event of accidents and lost or damaged cargo.

872 F.2d at 1467. *See also Harpalani v. Air-India, Inc.,* 634 F.Supp. 797 (N.D.Ill. 1986).

The ineffable significance of a loved one to the decedent's family and friends or the lack of marketability of an item are not persuasive reasons for dispensing with the Convention. There are many illustrations of losses that are not compensable for one reason or another or for which compensation on a weight basis is unrealistic. However, these instances emphasize the importance and desirability of specific insurance or other contractual arrangements—not the unfairness of the Convention. The Convention was not intended to afford complete coverage for casualty losses; it was meant to provide "necessary protection of a financially weak industry and [to ensure] that catastrophical risks would not be borne by the air carriers alone." *Floyd v. Eastern Airlines,* 872 F.2d at 1467. *See Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 256, 104 S.Ct. 1776, 1784, 80 L.Ed.2d 273 (1984) ("The Convention's first and most obvious purpose was to set some limit on a carrier's liability for lost cargo").

■ Aside from the willful misconduct exception, *Tarar v. Pakistan International Airlines, supra,* is not cogent for other reasons. There, not only was the air carrier found to have acted willfully—but it also "by its own admissions, consider[ed] human remains to be an extraordinary shipment ... to be accorded special care and dignity in handling." 554 F.Supp. at 474. It was the carrier's "announced policy and ... non-delegable duty to exercise the highest degree of care and to take every measure to ensure that human remains are not lost, mishandled, misrouted, or otherwise

---

**3.** *See Minutes* at, *e.g.,* 21, 78–79, 89, 93, 96, 98–100, 105–07, 130, 158–59, 200.

unnecessarily delayed in transportation." *Id.* at 474–475. *Tarar* points out that the Convention's limitation of liability may be avoided by contract and concludes that the parties in that case did so. Here, plaintiffs' motion for reconsideration offers no evidence that Pan Am considered human remains to be an extraordinary shipment or that it had adopted a casket handling policy in which a higher than ordinary degree of care would prevail. Nothing suggests that plaintiffs, or the funeral home in Philadelphia acting on plaintiffs' behalf, made special transportation arrangements that would obviate the Convention's ordinary liability limitation.

Moreover, no evidence has been adduced raising a triable issue of willful misconduct. Article 25(1) of the Convention states:

> The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his willful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be the equivalent of willful misconduct.

That the deceased's son was mistakenly advised to be at the Port Harcourt airport when the remains that arrived were those of another person, pltfs. brief at 3, flagrant as it may be, is totally unrelated to the mishandling of the deceased's casket. That the casket was bumped against a garage bay door at JFK airport, pltfs. brief at 5, is not, by itself, willful misconduct. Willfulness requires specific intent or reckless disregard. *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3d Cir.1980). The evidence adduced as to Pan Am's conduct does not amount to more than negligence.

Plaintiffs also assert that even if the Convention applies, they were not required under Article 26 to give Pan Am timely notice of the damage. Pltfs. brief at 4–6. "Defendant's acceptance of responsibility and its efforts to solve the crisis at hand constituted acts which decreased plaintiffs from thinking it necessary to go on and make a formal filing." Pltfs. brief at 5.

This argument was considered fully in the memorandum accompanying the grant of summary judgment.