In re Karen Lee CAMILLI, Debtor.

Karen Lee CAMILLI, Appellant,

v.

INDUSTRIAL COMMISSION
OF ARIZONA, Appellee.

BAP No. AZ–93–2437–JMeR.
Bankruptcy No. 92–14706–PHX–RTB.
Adv. No. 93–517.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Sept. 28, 1994.

Decided April 27, 1995.

Russell A. Brown, Chandler, AZ, for appellant.

Lawrence D. Hirsch, Phoenix, AZ, for appellee.

Before JONES, MEYERS and RUSSELL, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

The bankruptcy court held that a state agency's claim for reimbursement of workers' compensation benefits paid to the debtor's employee was nondischargeable as an excise tax.

We **REVERSE**.

### II

### FACTS

Karen Camilli ("Camilli") owned a janitorial business in Arizona called Final Touch. Arizona law required Camilli to provide workers' compensation benefits for her employees, using either State provided insurance, private insurance or appropriate self-insurance. Ariz.Rev.Stat.Ann. ("A.R.S.") § 23–961. On November 26, 1989, Barbara Kennedy ("Kennedy"), an employee of Final Touch, was injured at work. At that time,

Final Touch did not have workers' compensation insurance.

Under Arizona law, an employer who fails to procure workers' compensation insurance can be held liable to an injured worker in a legal action. A.R.S. § 23–907.A. The injured worker may either file a civil action against the employer or apply for compensation benefits with the Industrial Commission of Arizona ("ICA"). A.R.S. § 23–907.B. Payments of these benefits "act as a judgment against the employer." A.R.S. § 23–907.C.

Kennedy filed a claim for compensation with the ICA. The ICA awarded Kennedy $14,543.55 in compensation, plus $1,454.36 as a statutory penalty. The total award of $15,-997.91 was then filed in superior court as a judgment against Camilli.

On February 6, 1991, Camilli filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The ICA filed a proof of claim in the bankruptcy case, asserting that its claim was entitled to priority status as an excise tax pursuant to 11 U.S.C. § 507(a)(7)(E)(ii). The ICA also objected to confirmation of Camilli's Chapter 13 plan. After briefing and oral argument by both parties, the bankruptcy court took the matters under advisement. The Chapter 13 case was dismissed before the court issued a decision.

Seven months later, on December 10, 1992, Camilli filed a Chapter 7 petition. She subsequently filed a complaint alleging that the debt owed to the ICA was dischargeable because it was not an excise tax. After the ICA filed a response to the complaint, the parties stipulated to submit the issue to the trial court based upon the oral argument and pleadings filed in Camilli's prior Chapter 13 case.

The bankruptcy court issued an order on November 12, 1993, finding that the principal amount paid by the ICA was a nondischargeable tax, but that the penalties, attorney's fees and costs assessed by the ICA were dischargeable. A judgment was entered on December 15, 1993, providing that the sum of $43,237.81, was excepted from the discharge. This amount represents the principal amount of medical and compensation benefits which the ICA had paid to Kennedy through January 4, 1993. Camilli filed an appeal.

## III

### STANDARD OF REVIEW

Because the facts in this appeal are undisputed, the appeal involves only legal issues which are subject to *de novo* review. *In re Conco Bldg. Supplies, Inc.*, 102 B.R. 190, 191 (9th Cir. BAP 1989).

## IV

### DISCUSSION

■ Section 523(a)(1)(A) of the Bankruptcy Code excepts from discharge debts for taxes entitled to priority under Section 507(a)(2) and (a)(7). The ICA contends that its claim is nondischargeable because it is entitled to priority under Section 507(a)(7)(E)(ii) as an excise tax. Camilli disputes the ICA's characterization of its claim as an excise tax.

■ Everyone generally has preconceived notions of what a tax is. Under the proverbial "duck test," anything that looks like a tax, walks like a tax and quacks like a tax is a tax. *See City of Jackson v. Pittman*, 484 So.2d 998, 1000 (Miss.1986). A claim for reimbursement of funds paid to injured workers does not "quack like a tax" and traditionally would not be thought of as a tax. Yet we are not free to use this simple test. Courts must view the term "tax" as embedded in legal contexts from which the word gains concrete and specific meaning. *Brock v. Washington Metropolitan Area Transit Auth.*, 796 F.2d 481, 489 (D.C.Cir.1986). Characterization of a payment as a "tax" in certain contexts has no talismanic significance, especially when the term is applied to an elaborate statutory scheme such as that created by the Bankruptcy Code. *See Union Pacific R. Co. v. Public Utility Com'n*, 899 F.2d 854, 861 (9th Cir.1990). We look to federal law to determine whether a debt is a tax entitled to priority in bankruptcy. *New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941).

The issue of whether charges incurred under a state's workers' compensation scheme should be viewed as taxes is a difficult one, generating a diversity of decisions which, on the whole, may do more to confuse the issue than to clarify it.[1] Even the court in the leading case of *In re Lorber Industries of California, Inc.*, 675 F.2d 1062, 1067 (9th Cir.1982), admitted that determining whether assessments are fees or taxes can be "a close question." The distinction between a fee and a tax in this case also is a close question. The Ninth Circuit's analysis in the *Lorber* case, as additionally developed by the Sixth Circuit, leads us to conclude that the claim for reimbursement is dischargeable.

■ *Lorber* adopted the list of four factors describing a tax in the context of bankruptcy law, which was first set forth in *In re Farmers Frozen Food Company*, 221 F.Supp. 385, 387 (N.D.Cal.1963), *aff'd without opinion*, 332 F.2d 793 (9th Cir.1964). An exaction of a tax is characterized as:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) Imposed by, or under authority of the legislature;

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing power of the state.

*Lorber, supra*, 675 F.2d at 1066. On its face, this list is broad and has the potential to include any and all sovereign undertakings. *Suburban I, supra*, 998 F.2d at 341–42; *Payne, supra*, 27 B.R. at 814. However, after listing the factors, the court in *Lorber*

expounded on them and found that the sovereign undertaking at issue was not a tax. *Lorber, supra*, 675 F.2d at 1066–1068. Although the *Lorber* case concerned the Bankruptcy Act, the analysis in *Lorber* has continuing viability for cases brought under the Bankruptcy Code. *Hutchinson, supra*, 135 B.R. at 891. *See In re George*, 95 B.R. 718, 720 (9th Cir. BAP 1989) (applying *Lorber* to a case under the Bankruptcy Code), *aff'd without opinion*, 905 F.2d 1540 (9th Cir. 1990).

The first element of a tax set forth in *Lorber* is "[a]n involuntary pecuniary burden, regardless of name, laid upon individuals or property." The court explained that while debts are voluntary obligations based on express or implied contracts, taxes are noncontractual obligations levied without the consent or voluntary action of the taxpayer. 675 F.2d at 1066.

The court in *Lorber* examined an ordinance which allowed a water district to assess surcharges only when district services were used by industrial customers and only in an amount proportionate to their use. The court noted that imposition of these charges was triggered by the debtor's decision to discharge industrial wastewater. Because the assessment resulted from the debtor's acts, the court found that it was not a tax. 675 F.2d at 1067. Rather, the amounts specifically charged for those services were by nature a debt obligation, based on a contractual agreement, the application for and issuance of a permit. *Id.*

In this case, Camilli had the choice of using self-insurance or private insurance instead of the state system of workers' com-

---

1. *See, e.g., In re Suburban Motor Freight, Inc.*, 998 F.2d 338 (6th Cir.1993) *("Suburban I ")* (premiums owed to the State for workers' compensation insurance entitled to priority as excise taxes); *New Neighborhoods v. W.Va. Workers' Comp. Fund*, 886 F.2d 714 (4th Cir.1989) (same); *Pan American Papers Mills, Inc.*, 618 F.2d 159 (1st Cir.1980) (same); *In re Chateaugay Corp.*, 153 B.R. 632 (S.N.Y.1993) (state claims for unpaid workers' compensation premiums entitled to priority; state claims for reimbursement of funds paid to injured employee of uninsured employer not entitled to priority as excise taxes); *In re Hutchinson*, 135 B.R. 890 (Ariz.1992) (claim for reimbursement of funds paid to injured employee

entitled to priority as excise tax); *In re Metro Transp. Co.*, 117 B.R. 143 (E.Pa.1990) (premiums owed to the State for workers' compensation insurance not entitled to priority as excise tax); *In re E.A. Nord Co., Inc.*, 75 B.R. 634 (W.Wash. 1987) (premiums owed to the State for workers' compensation insurance entitled to priority as excise tax); *In re Payne*, 27 B.R. 809 (Kan.1983) (claim for reimbursement of funds paid to injured employee was dischargeable fee rather than nondischargeable excise tax); *In re Beaman*, 9 B.R. 539 (Or.1980) (claim for reimbursement of funds paid to injured employee was nondischargeable excise tax).

pensation. The Bankruptcy Code generally does not give priority to claims resulting from injuries suffered by a debtor's employee. *See Chateaugay Corp., supra,* 153 B.R. at 635 ("The states agree that workers' compensation claims arising out of pre-petition injuries are ordinarily entitled to general unsecured status."). If a private insurer had paid Kennedy's claim, the debtor would have had no obligation to reimburse the insurer for the claim and the insurer's claim for any insurance premiums owed would not be given priority in bankruptcy. The payments to Kennedy by the ICA resulted from Camilli's voluntary decision not to provide insurance, and therefore the ICA's assessment should be regarded as a fee.

In sum, under *Lorber,* assessments stemming from a debtor's decision to use specific services provided by the State are dischargeable as fees. Because in Arizona an employer may elect not to use insurance provided by the State, charges assessed by the State are in the nature of fees rather than taxes.

The ICA points out that once Camilli decided not to provide either private insurance or proper self-insurance, Arizona law required her to reimburse the ICA for benefits paid to Kennedy. The ICA maintains that the levy was therefore in the nature of an involuntary tax. This reasoning conflicts with that in *Lorber.* The *Lorber* court rejected the water district's argument that because it had statutory authority to impose charges on entities who had not acquired a permit prior to use, the source of the charge was statutory rather than contractual. *Lorber, supra,* 675 F.2d at 1067 n. 4. The court in *Lorber* stated:

> [I]t would appear that imposition of charges on non-permit users would not transform the charges into taxes. The non-permit user who discharges into the system also incurs a debt obligation, based on an implied contract. The source of the obligation is not the statute authorizing imposition of charges, but the non-permit user's voluntary act of using the system.

*Id.* The water district's authority in *Lorber* is analogous to that of the ICA in the instant case, in which the ICA imposed charges on Camilli after she failed to obtain insurance.

Here, the ICA's claim arose only because Camilli chose not to obtain alternative insurance. The claim should be considered to stem from the ICA's implied voluntary contract with Camilli for subrogation of monies paid to Camilli's employees. *See Payne, supra,* 27 B.R. at 817.

It may seem unfair to allow Camilli to discharge her debt to the ICA, since she violated Arizona law by failing to obtain insurance. However, Section 523 does not make every debt incurred in connection with a violation of state statute nondischargeable.

▪ The *Lorber* case differs somewhat from the case at hand in that it involved charges for emitting waste and was brought under the former Bankruptcy Act. The issue presented and statutory authority applied in *In re Suburban Motor Freight, Inc.,* 36 F.3d 484 (6th Cir.1994) ("*Suburban II* "), are virtually the same as those in the instant case. *Suburban II* is the only circuit court case concerning whether a State's claim for reimbursement of funds paid to injured workers should be characterized as a tax under the Bankruptcy Code. We should "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever we can." *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987). Absent a decision by our Court of Appeals or a conflict between circuits, the Panel should regard the authority of another circuit as highly persuasive. *See Onyebuchim Onyeanusi v. Pan American World Airways,* 767 F.Supp. 654, 655 n. 1 (E.D.Pa. 1990), *aff'd,* 952 F.2d 788 (3rd Cir.1992).

Citing and elaborating on *Lorber,* the court in *Suburban II* held that the claim was not a tax, but merely a dischargeable fee. It noted that if the debtor had used private insurance, it would not have incurred any additional liability for reimbursement for claims payments made on its behalf. 36 F.3d. at 489. The court held that it would be unfair to give priority status to the State's surplus fund while letting unpaid private insurers suffer along with the rest of the unsecured creditors. *Id.* We find the Sixth Circuit's approach sound in refusing to elevate what is essentially an insurance subrogation claim to tax priority status.

## V

## CONCLUSION

We view the levy at issue to be in the nature of a fee rather than a tax, and therefore **REVERSE**.

JONES, Bankruptcy Judge, dissenting:

All fifty states have enacted some form of mandatory workers' compensation scheme, which requires an employer to provide workers' compensation insurance for its employees. *Chateaugay I,* 153 B.R. at 634. With regard to how employers may obtain this insurance, there are two general variations. Some state systems require the employer to purchase insurance directly from the state. *See Payne,* 27 B.R. at 815. Other states, however, allow the employer to purchase the required coverage from private sources, including bonded self-insurance and private commercial insurance companies. *See Chateaugay I,* 153 B.R. at 638–39.

The Special Fund of the ICA is mandated by Arizona statue [1] to provide compensation benefits to injured employees whose employers violated state law by failing to provide workers' compensation coverage. The Arizona scheme directs the ICA to collect reimbursement from delinquent employers for the monies expended by the Special Fund to provide benefits for those injured employees.

In contrast to the Special Fund, no private insurers are obligated to pay benefits on behalf of the injured workers of uninsured employers. Thus, competing reimbursement claims by private insurers are highly improbable, if not inconceivable. If an unpaid reimbursement claim constitutes an "excise tax" as a matter of bankruptcy law, the claim is nondischargeable in an individual's bankruptcy. *New Neighborhoods,* 886 F.2d at 719. The Ninth Circuit has found that the characterization of an obligation as a "tax" in the unique context of an elaborate statutory scheme, such as that created by the Bankruptcy Code, will generally not be extended to non-bankruptcy cases. *See e.g., Union Pacific Railroad Company v. Public Utility Commission of Oregon,* 899 F.2d 854 (9th Cir.1990) (refusing to apply *Lorber* test to

non-bankruptcy issue at hand) (citing *Massachusetts v. United States,* 435 U.S. 444, 460 n. 18, 98 S.Ct. 1153, 1163–64 n. 18, 55 L.Ed.2d 403 (1978)).

Although "excise tax" is not defined in the Bankruptcy Code, it was defined by the United States Supreme Court as a "pecuniary obligation laid upon individuals or their property, regardless of their consent, for purposes of defraying the expenses of government or undertakings authorized by it." *Feiring,* 313 U.S. at 285, 61 S.Ct. at 1029. In *Lorber,* the Ninth Circuit identified four factors for evaluating whether a payment to a government agency is a tax under federal law. A tax is: (1) an involuntary pecuniary burden imposed on individuals or property; (2) imposed by, or under the authority of, the legislature; (3) for public purposes such as for defraying expenses of government or governmental undertakings; (4) imposed under the police or taxing power of the state. *Id.* at 1066. Although the *Lorber* test was developed under the former Bankruptcy Act, it has subsequently been applied in cases under the Bankruptcy Code, indicating its continued viability. *George,* 95 B.R. at 720.

### 1. Initial "Fee" vs. "Tax" distinction: Reimbursement Claims Are Not "Fees" Under the *Lorber* Rationale

While the majority contends that reimbursement claims constitute "fees" under the Ninth Circuit's *Lorber* rationale, such a holding is contrary to the vast majority of case law addressing this issue. *Payne,* 27 B.R. at 813–14 (explicitly rejecting argument that assessments and reimbursement claims were "fees" under *Lorber* rationale); *E.A. Nord Co.,* 75 B.R. at 636–37 (finding that Washington state assessment was a "tax" and not a "fee" under *Lorber* rationale); *see also Suburban II,* 36 F.3d at 488 (criticizing *Lorber* test as lenient, but finding reimbursement claim satisfied Ninth Circuit's *Lorber* definition of "excise tax"); *In re Chateaugay,* 177 B.R. 176, 182–85 (S.D.N.Y.1995) (*"Chateaugay II"*) (finding reimbursement claims satisfied *Lorber* test, denying priority status under § 507(d)); *Chateaugay I,* 153 B.R. at

---

**1.** A.R.S. §§ 23–907 and 23–1065.

638–41 (finding that reimbursement claims satisfied *Lorber* test, denying priority status based on *Payne* "non-tax characteristics" factor); *Hutchinson*, 135 B.R. at 891 (holding ICA reimbursement claims are "excise taxes" under *Lorber* test).

The *Chateaugay I* court expressly rejected the argument that premium assessment claims and reimbursement claims were "fees" under the *Lorber* rationale. *Chateaugay I*, 153 B.R. at 638–39; *see also E.A. Nord* 75 B.R. at 636–37. The *Lorber* court found that a sewer surcharge was a fee since it was "for services provided to the industrial users of the system ... rather than to the general local population." *Lorber*, 675 F.2d at 1067. While a tax is an exaction for a public purpose, a fee relates to an individual privilege or benefit to the payer. *Chateaugay I*, 153 B.R. at 638. Premium assessment claims and reimbursement claims are not fees which confer a benefit on the employer separate from the benefit to the general public. *Id.* These assessments are for the public purpose of creating a fund to pay workers' compensation claims, thus, benefitting the general public who does not have to support the claimant employee. *Id.* (citing *Suburban Motors*, 134 B.R. 617, 624 (Bankr.S.D.Ohio 1991)); *Chateaugay II*, 177 B.R. at 184.

## 2. Purely "Public" Schemes: In Systems Where Employers Lack a Private Insurance Option a Direct Workers' Compensation Assessment by the State Against an Employer is an Excise Tax in Bankruptcy

· The prevailing rule is that under a workers' compensation scheme where employers are directly assessed by the state, the direct assessment is an "excise tax" in bankruptcy. *Chateaugay I*, 153 B.R. at 639; *Payne*, 27 B.R. at 815. An early line of cases held that such assessments were not for public purposes, but were instead for the benefit of a discrete class, and thus were not taxes. *Id.* (citing *In re Farrell*, 211 F. 212 (W.D.Wash. 1914)); *In re Eureka Paper Co.*, 44 Am.

Bankr.Rep. 179 (N.D.N.Y.1919); *In re Rockaway Soda Water Mfg. Co.*, 36 Am.Bankr. Rep. 640, 226 F. 520 (E.D.N.Y.1915). However, that rationale has been criticized and rejected. *See Pan American Paper*, 618 F.2d at 162, n. 3; *Ernst v. Hingeley*, 11 Wash.2d 171, 118 P.2d 795 (1941); *C.S. Barlow & Sons v. H & B Lumber Co.*, 153 Wash. 565, 575, 280 P. 88, 91 (1929).

As noted above, the "public purpose" of workers' compensation systems is to compensate those employees who might otherwise require public support if their common law tort claims could not be successfully asserted. *New Neighborhoods*, 886 F.2d at 718–19; *accord Chateaugay II*, 177 B.R. at 184; *In re Hutchinson*, 135 B.R. 890 (Bkrtcy.D.Ariz. 1992); *E.A. Nord*, 75 B.R. at 636. Although this purpose may also be regarded as a funding mechanism for a specific state undertaking, that does not diminish the public purpose that these systems serve. *New Neighborhoods*, 886 F.2d at 719. Furthermore, the punitive and contingent nature of such a tax does not detract from its character as an excise tax. *Beaman*, 9 B.R. at 542.

## 3. First *Lorber* Factor—"Involuntary" Pecuniary Obligation: Courts are Split in Jurisdictions Where *Private* Workers' Compensation Insurance is Allowed

To qualify as an excise tax under the *Lorber* factors, the pecuniary obligation at issue must be "involuntary." [2] In *Chateaugay I* and *Chateaugay II* the courts recognized that the availability of a "private" insurance option in a statutory scheme does not affect the involuntary nature of the underlying obligation to provide workers' compensation insurance. *Chateaugay II*, 177 B.R. at 183–84; *Chateaugay I*, 153 B.R. at 639; *accord Payne*, 27 B.R. at 814. Also, in *New Neighborhoods*, the state's workers' compensation system allowed a private source, bonded self-insurance. *New Neighborhoods*, 886 F.2d at 716. Notwithstanding that a private source

---

2. In the instant case, Camilli argues that since her decision not to carry workers' compensation insurance (a statutory violation) was voluntary, this element of the *Lorber* test is not satisfied. This argument has been rejected by other courts

and is without merit. *Beaman*, 9 B.R. at 541 ("[n]either compliance with the law nor payment of the tax imposed is elective once benefits are paid to an injured worker"); *see also Williams v. Motley*, 925 F.2d 741, 744 (4th Cir.1991).

was allowed, the Fourth Circuit held that the state's premium claims were involuntary "excise taxes" since employers were compelled to participate in the system whether they paid into the fund or carried substitute insurance. *New Neighborhoods,* 886 F.2d at 719.[3]

Finally, a primary concern voiced by the Sixth Circuit in *Suburban I* and *Suburban II,* was that where a state scheme allows private insurance it would be unfair to consider state claims "taxes" while the competing claims of unpaid private insurers would be treated as general and unsecured. *Suburban I,* 998 F.2d at 342; *Suburban II,* 36 F.3d at 488–89. However, while such a concern may exist with regard to state premium assessment claims, the same danger is not applicable in considering the narrow issue of reimbursement claims since there are no private insurers competing with the Special Fund to pay benefits on behalf of the injured employees of uninsured employers.

### 4. Reimbursement Claims

Where a state pays benefits on behalf of the injured employee of an uninsured employer, courts are split as to whether a state's claim for reimbursement is an excise tax entitled to priority treatment in bankruptcy. Courts that reach the narrow reimbursement issue generally agree that both the obligation to carry insurance and the obligation to reimburse a state's special fund satisfy the Ninth Circuit's *Lorber* factors. *In re Payne,* 27 B.R. at 814; *Hutchinson,* 135 B.R. at 891; *Beaman,* 9 B.R. at 542; *Chateaugay II,* 177 B.R. at 182–84; *Chateaugay I,* 153 B.R. at 637–41; *see also Suburban II,* 36 F.3d at 488–89.

In *Suburban II,* the Sixth Circuit found that reimbursement claims satisfied the *Lorber* definition of "excise taxes." *See Subur-*

*ban II,* 36 F.3d at 488. However, the *Suburban II* court criticized the *Lorber* factors as being too permissive[4] and added two criteria to the Ninth Circuit test that are intended to restrict the "public purpose" prong.[5] The *Suburban II* court found that a state's reimbursement claim did not satisfy these two additional criteria and denied priority status. *Id.* at 489. Other courts have denied priority status to reimbursement claims under Section 507(d) or by adding a step to the *Lorber* analysis comparing the "tax" and "non-tax" characteristics of the claim. *See e.g. Chateaugay II,* 177 B.R. at 184–85 (denying priority under § 507(d)); *Payne,* 27 B.R. at 816–17 (comparing tax and non-tax characteristics); *accord Chateaugay I,* 153 B.R. at 641. In application, additional criteria do not appear to clarify the *Lorber* analysis, and may in fact merely add to the confusion in this problematic area.

In contrast, bankruptcy courts in the Ninth Circuit have applied the *Lorber* analysis and found that the reimbursement claims of special funds are nondischargeable excise taxes in bankruptcy. *Beaman,* 9 B.R. at 542; *Hutchinson,* 135 B.R. at 891. The *Beaman* court held that a reimbursement claim was a nondischargeable excise tax imposed upon those who occupy the status of employers who have not obtained insurance required by law. *Beaman,* 9 B.R. at 542. In *Hutchinson,* the bankruptcy court held that the ICA's reimbursement claim received Section 507(a)(7)(E) tax priority since the reimbursement obligation was mandatory and served an important governmental interest. *Hutchinson,* 135 B.R. at 891.

In the instant case, the *Lorber* factors are satisfied. Furthermore, no private creditors compete with the state to provide benefits for the injured employees of uninsured employ-

---

**3.** To limit the class of claims afforded priority status under the *Lorber* rationale, some courts deny priority status where a state's scheme allows for private insurance. *See Suburban I,* 998 F.2d at 342 (suggesting that if a state allowed employers to purchase private insurance it would be unfair to call state-collected premiums "taxes" while treating unpaid private insurance premiums as general unsecured claims); *Suburban Motor II,* 36 F.3d at 488 (finding that by allowing private sources, including bonded self-insurance, the "public welfare" becomes less dependent on

the financial soundness of the state system); *Metro Transp. Co.,* 117 B.R. at 154.

**4.** *Suburban II,* 36 F.3d at 488 (citing *Suburban I,* 998 F.2d at 341).

**5.** These two additional factors are: (1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to the government does not disadvantage private creditors with like claims. *Suburban II,* 36 F.3d at 488.

ers. Thus, notwithstanding the concerns expressed by the Sixth Circuit in *Suburban I* and *Suburban II,* there are no similarly situated private creditors to be prejudiced. Also, reimbursement claims are assessed universally against the delinquent employers of injured workers according to Arizona's statutory scheme.

Although under the *Lorber* standard many government claims may be "excise taxes" for purposes of Section 507(a)(7), that result in the instant case is consistent with the purpose of Congress in providing for priorities in bankruptcy. *See New Neighborhoods,* 886 F.2d at 720 (citing *Feiring,* 313 U.S. at 285, 61 S.Ct. at 1029). To hold otherwise with respect to reimbursement claims would benefit only that class of delinquent employers who fail to obtain worker's compensation insurance in violation of state statute. Accordingly, I would **AFFIRM.**